## BRANCH BANK AT MOBILE v. STROTHER.

15 51
101 368

15 51
130 509

1. All debts due the bank, after maturity, carry interest, at the rate of eight *per cent per annum.*

2. The banks of this State, cannot discount notes, or bills, at the rate of eight *per cent per annum*, having a longer period to run than twelve months: nor can they extend a debt due them, and charge interest by way of annual discount, in advance. They may discount a bill, or note, having more than twelve months to run, by ascertaining the present worth of the note, or bill, at eight *per cent*, for the time it has to run.

4. A discount of a note, made by calculating the interest for one year, and multiplying this sum by the number of years the note has to run, and deducting the amount thus ascertained, from the amount of the note, is illegal, whether made by a bank, or by an individual.

4. The statute of limitations will not apply, because a part of the debt has been paid. The complainant's right to relief exists, whilst the debt continues, and the payment of any portion of it, will be applied to the payment of the principal, and lawful interest.

5. A recognition in the bill, of the liability of the complainant to pay the amount actually due, and lawful interest, and a submission to pay this

sum as the court shall direct, invests the court with jurisdiction to render a decree against him, for the proper amount.

6. It is no ground for a reversal, that a reference to the master was prematurely made.

Error to the Chancery Court of Mobile.   Before the Hon. A. Crenshaw, Chancellor.

THE defendant in error filed his bill against the plaintiff, alledging that on the 12th day of February, 1840, he was indebted to the bank, either as principal or surety, in the sum of $29,966 09.   That on that day he extended the debt, giving security, and executing six notes, payable on the 1st of February of each year, one due at one year, and one falling due each successive year.

The note due in Feb'y 1841, was for............$4,340 44
The one due   "   1842,......................4,752 52
The one due   "   1843,......................5,252 32
The one due   "   1844,......................8,787 07
The one due   "   1845,......................9,955 41
The one due   "   1846,.....................11,482 38

The bill also alledges, that the three first of these notes have been entirely paid, and considerable payments have been made on the fourth and fifth.   The whole amount paid being $25,493.

The bill further alledges, that in taking the new notes, and casting the interest thereon, errors have been made, greatly to the prejudice of the complainant, and that the debt has been increased beyond the amount due for principal and interest.   It is shown by an exhibit to the bill, that the sum of $29,966 09 was divided and extended, in the following manner :

In the first note was included,..................$4,000 00
The interest charged for one year, ...............  340 44
In the second note was included, of principal,....  4,000 00
The note due in two years, interest charged, ....   752 50
In the third note is included, of principal,.......  4,000 00
Due in three years, interest charged,..............  1,252 50
In the fourth note is included, of principal,......  5,998 69
Interest charged, four years, ......................  2,798 02
The fifth note includes, of principal,..............  5,998 69

Interest charged for five years, .................... 3,955 39
In the sixth note was included, of principal,...... 5,988 69
Interest charged for six years,.... ............ ... 5,493 69

The bill also alledges, that this overcharge of interest, was the result of mistake, or if the bank knowingly, or wilfully charged the amount specified, it would involve them in the crime of usury, and extortion. That complainant has but since the last term of this court discovered the error. That he does not wish to avoid any portion of the debt, and the lawful interest; that he recognizes his liability to pay the principal, and all lawful interest, and seeks only to correct the error. The bill also states, that the complainant has submitted this subject to the bank, but that it declines to rectify the error.

The bill prays an account, and that the amount overcharged be credited to complainant; and he submits that it be entered as a credit on the last note, and that the amount due now, complainant may be permitted to pay on the terms of the act of assembly, in regard to bank debts, or on such other terms as shall be considered proper by the court.

The answer of the bank admits that the complainant was indebted at the time stated, in the sum of $29,960 69, on the 12th February, 1840, and that on that day he made an arrangement with the bank, by which the amount was settled, by giving new notes to be discounted by the bank, in such amounts as would produce the sum then due in cash; that a calculation was made at the time, from which it appears, that the notes tendered by him for that purpose should be for the amounts specified in the exhibit to the bill. The answer also alledges, that it was agreed and stipulated at the time, that the new notes should be discounted in this manner, and they were made for the amount expressed in them, in order to produce the nett amount of the debt, after deducting the discount. The answer also admits, that complainant has paid $28,401 27, and avers, that if the new notes are for more than they were entitled to receive, it was the result of mutual mistake between the complainant and respondents, and denies all intent to exact more than legal interest. The answer also contains a demurrer to the bill.

Before any decree was made by the chancellor, a reference

was ordered to the register, to state the accounts between the parties. The language of the reference is, "the court orders the bill and answer to be referred to the register to state an account hetween the parties, as follows: to ascertain the amount due the defendant, allowing a discount of six per cent on all the notes, except the first, and on that a discount of 8 per cent. Also, to ascertain the amount that would be due, allowing interest on the debt at 8 per cent., and to report on what principle the notes were taken, as stated in the answer."

The result of the report of the register is, that taking off discount, at 8 per cent. from the notes, for the first yearʈ and 6 per cent. discount for the residue of the time they had to run, the nett amount in cash they would produce on the day of discount, would be the amount admitted to be due the defendant, by complainant, on the day of settlement—that is, the notes thus discounted on the 12th of February, 1840, would produce in cash $29,966 69; and deducting from the notes the amount admitted to have been paid, and supposing the mode of settlement stated in the pleadings to be correct, there is due on the 9th April, 1846, to respondents, $18,931 24. That to allow the respondent interest on the original debt at the rate of eight per cent. per annum, and to credit him with the payments admitted to have been made, and first extinguish the interest due at the time of each payment, and credit the balance of the payment on the principal, and there is due to respondent, $14,662 14. The difference in the two modes of settlement, that is, between the mode adopted by the bank, and the mode of settlement allowing 8 per cent. interest, is $4,269 18.

The cause was heard on bill, answer, and the report of the master, and no objections to the calculations of the master being made, the chancellor decreed that complainant be allowed as a credit, the sum of $4,269 18, to be placed on the note last due.

From this decree a writ of error is prosecuted to this court. The errors assigned are—

1. That the demurrer should have been sustained.

2. That no reference to the master should have been made

until there was a decree setting forth the equities between the parties.

3. That the order of reference does not call for such a report as would ascertain the equities between the parties.

4. That the report does not pursue the reference, but varies from it.

5. Decree allowing the complainant the credit.

J. W. LESESNE, for plaintiff.

J. A. CAMPBELL, for defendant in error.

J. P. Strother, in 1840, as principal and surety, was indebted to the Branch Bank at Mobile, in the sum of $29,-966 06. Much the largest portion of this debt was due as surety for others. He proposed to extend it, and to give new securities. The bank accepted his proposition, but took interest by way of discount.

An exhibit to the bill will show the following results: That on the first year's note the excess was $26 67; second do., $118 73; third do., $298 55; fourth do., $891 21; fifth do., $1,580 43; sixth do., $2,628 28. When I say excess, I mean that these amounts exceed the amount of legal interest on the debt. The principle on which this is accomplished, will appear in a *rhetorical report of the master*. No dispute is made of the fact. The transaction is evidently far more injurious than the charge of compound interest. By the charge of compound interest, a debt is doubled in ten years and a fraction. By the mode of discount, it is doubled in little over six years. The interest paid on the sixth note is above fifteen per cent. per annum. This is ascertained by calculation. These calculations have been made in the report.

A very large proportion of the debt was paid at the date of the bill, and no difficulty exists as to the remainder. This litigation is *bona fide*, to obtain relief from oppressive charges.

The law considers, and experience proves, that eight per cent. is a sufficient compensation for forbearance of a debt.

The rate is exorbitant, when the prices of produce for the last six years are considered. The rule of law is the rule of common sense.

Courts will not allow of changes of law by private agreement. Stipulations for compound interest are only allowed in a few cases, and under great restriction. There is nothing illegal in the reservation of the right to charge compound interest, yet, because it tends to oppression and injustice, courts of chancery interpose to inhibit it. Breckenridge v. Brooks, 2 A. K. M. 335; Connecticut v. Jackson, 1 Johns. Ch. Rep. 13, 550; 3 Hen. & M. 89; 6 Johns. Ch. Rep. 313; 2 Porter, 351; 2 B. Mon. 336.

The charter of the bank no where allows the discount of notes having a longer time to run than twelve months, and except in two specified cases, the bank is required to charge only at the rate of six per cent. upon its loans and discounts. The case before the court did not fall within the terms of the charter, which allowed the bank to make discounts at the rate of eight per cent. If this discount proceeded from a mistake of law, the court would allow the bank to correct the result, but surely it would not when the debtor does not dispute the debt allow, the bank to retain the excessive charge. 1 Rich. Eq. R. 414; 1 Bailey's Eq. R. 505. In the court below, it was hardly contended that the correction should not be made. The objection taken there was to the frame of the bill. The bill did not offer to pay the balance due.

On principle, it is evident this was not necessary. A party who comes into court asking relief, submits himself to such terms as the court will impose. He assents to do equity. On authority, the point is clear. It is not necessary to make the submission. 4 Eq. Dig. 425, citing 2 Young & C. 15, § 18. There are several authorities to the same effect.

DARGAN, J.—The State Bank and its Branches, are allowed to discount notes and bills, at different rates, according to the time they have to run before maturity; but there is no special law prescribing the rate of interest these debts shall bear after maturity, consequently the interest they bear after they become due, is regulated by the general interest law of the State, and all bear eight per cent.

On the day of the settlement, all the debts owing by the complainant to the bank were due, and all were bearing eight per cent. The agreement was to extend the whole indebt-

edness, dividing it into six annual payments, and notes were given, falling due from one to six years.

The amount of these notes exceeds the debt, and lawful interest added to it, $4,269 18. This charge of interest, over the rate of eight per cent., the plaintiffs in error contend, they had the right to make, and can legally require the defendant to pay, because they are authorized to discount notes at eight per cent., having twelve months to run, and in extending a debt over due, they can charge interest by way of discount; or to discount the note, given in extension of the debt, and apply the proceeds to its payment.

The authorities relied on by the plaintiff's counsel, do hold, that a bank may discount a note, of its debtor, under an agreement to apply the proceeds to the payment of the debt; and even if the note so discounted, be paid by the discount of another, such a transaction is not usurious, unless it was a mere cover to hide usury. The Bank of Utica v. Wagner, 2 Cowen, 712; The State Bank v. Hunter, 1 Dev. R. 100; 9 Mass. R. 49. But we do not think these authorities come up to this case. In none of the cases referred to, had the note a longer period than twelve months to run, before maturity. The period of time the notes had to run before maturity, makes the distinction between this cause, and the cases referred to, and the question is, has the bank the right by law, thus indefinitely to extend the payment of its debts, and charge interest by way of annual discounts? If we affirm that the bank has the right, we must sanction results, that the common sense of all mankind would condemn as oppressive, and unjust. For instance, the note that falls due the sixth year, nearly doubles the principal, and if it had been extended twelve years, it would have nearly quadrupled the principal included in it. Such a rule of computing interest on debts, the payment of which is extended several years, leads to results that cannot be tolerated by law. 2 A. K. Marsh. 335; 1 Johns. Ch. R. 13, 550; 6 Ib. 313.

The length of time then that the note, or bill has to run, becomes a material inquiry, in distinguishing between a legal discount, and an illegal transaction. In none of the cases referred to, did this question arise, for none of the notes had

more than twelve months to run; and I have not been able to find any decisions, that throw much light on the subject, or lay down any settled rule in reference to it. Mr. Chitty merely says, that if bills having two or three years to run, are discounted, and interest thus taken in advance, the transaction would be held usurious; and to the same effect, is the case of Martindale and Marsh, 3 Bos. & Pul. 154.

I will not, therefore, undertake to lay down a rule, that shall govern in every transaction. But as the respondents are authorized by their charter, to discount notes, having twelve months to run, at eight per cent. per annum, and we see that some limit must be fixed to the period of time the note has to run, in order to justify the discount of it at eight per cent. per annum, we feel no hesitation in saying, that the bank is not authorized to discount notes or bills at eight per cent., having a longer period to run than twelve months; nor can they extend a debt due to them, longer than twelve months, and charge interest by way of annual discounts in advance. They may, it is true, extend the payment of their debts to any time, they and their debtors may agree, but if they extend them over twelve months, they can only charge such interest, as any other individual is authorized by law to receive of his debtor. We will not say, that the bank may not discount a note or bill, having longer than twelve months to run, even at eight per cent., if the calculation of the interest to be deducted, be made by the common rules of arithmetic; that is, by ascertaining the present worth of the note or bill, at eight per cent., for the time it has to run. But the discount intended to be interdicted, is calculated in this manner: first ascertaining the interest for one year at eight per cent., on the sum mentioned in the note, and then multiplying the interest for one year, by the number of years the note or bill has to run, and deducting the amount thus ascertained, from the amount named in the note. We should feel no hesitation in saying, that the discount thus calculated, when the note or bill has longer to run than twelve months, is illegal, whether made by a bank, or any individual. If the note or bill had twelve years to run, and was discounted by this rule, every four dollars received by the maker of the note, would in effect yield ninety-six dollars interest. Or a note

of one hundred dollars thus discounted, would give to the borrowor four dollars *only*, although the present worth of a note discounted at eight per cent. for the same period of time, is a fraction over fifty-one dollars, if the discount be calculated by the common rules of *arithmetic.* The mode of computation adopted by the bank, in ascertaining the interest to be charged in this case, was to charge interest at eight per cent. by way of annual discount, for every year the note had to run. That is, for the first year, they ascertained how much the principal in the note would yield, if employed in discounting notes. The second year, they ascertained what the principal and interest, added together, would yield, employed in the same manner, and so on for the number of years the note had to run. If the law would tolerate the extension of a debt, charging interest by this mode of computation to any indefinite period of time, had the debt been extended eighteen years, and the interest cast in the same manner, would it not be legal? Yet, if it had been extended eighteen, instead of six years, the principal, in the last note, would have borne over seven hundred per cent.

The cases referred to in 2 Cowen, and 1 Dev. Rep., although they do in effect hold that a bank may extend a debt, charging interest by way of discount, yet the extension in those cases was for a short time, and even if those decisions are to be relied on as authority, and as affording a correct exposition of the law, we cannot extend the principle recognized by them, to any indefinite period of time, without sanctioning results, that both the learned, and the unlearned, with one voice would pronounce onerous, oppressive and unjust.

If the bank can be permitted to extend a debt over due, and charge interest by way of discount, their contract must not embrace a longer period than one year. If they wish to extend their debts longer, they can only charge interest at eight per cent. per annum.

The counsel for the plaintiff in error, has submitted an able argument, to show, that the bank has not been guilty of usury.. It is true, that neither the bank intended to charge, nor the defendant to pay, more than lawful interest, and the over-charge of interest, is the result of an improper mode of calculating the interest, for the time the notes had to run;

and the facts negative the existence of any corrupt intent. To constitute usury, there must be an intent to take more than lawful interest; if more be reserved by mistake, it is not usury. Nor can it make any difference, whether the mistake occurs, by adopting an improper mode of calculating interest, or by erroneously adding, or multiplying figures. 7 Gill & Johns. 44; 10 Id. 300.

I should therefore be inclined to agree with the plaintiff's counsel, that the facts of this case, do not constitute usury; yet, because the bank may not have been guilty of usury, they cannot be entitled to receive the over-charge of interest, but the notes to the extent of the over-charge are void, for the want of consideration, and to this extent is the plaintiff entitled to relief.

But it is objected that the right to relief is barred by the statute of limitations. It must be borne in mind, that the bill is not filed to recover back money paid. The amount that has been paid, whether the excess of interest would constitute usury or not, must be appropriated to the principal and lawful interest. 1 Leigh, 453; 7 Monroe, 596.

The over-charge of interest, which is the foundation of the complainant's right to relief, adheres to the debt, as long as it is in existence, and the payment of a portion of the debt, which the law will apply to the extinguishment of the principal and lawful interest, will not and cannot take away this right to relief. The statute of limitations cannot, therefore, have any influence on the *question*.

It is again said, that the bill is defective, in not offering to pay the amount actually due, and lawful interest. The bill recognizes the liability of the complainant to pay the amount actually due, and lawful interest, and the complainant submits to pay this sum, in such manner as the court shall direct. This we think is a sufficient offer to pay, if the *gravamen* of the bill had been to obtain relief against a debt alledged to be usurious. The reason why it is necessary, in a bill seeking relief against usury, to offer to pay the amount actually due, is, that the court will not interfere, unless the complainant will either pay, or submit, that a decree be rendered against him for the principal and lawful interest, and the court has not the power to render a decree against him, on

his own bill, unless he makes this offer by the bill. The complainant submits in his bill, to pay the amount actually due, in such manner as the court shall direct; he invests the court with jurisdiction to render a decree against him for the proper amount, as fully as if he *had offered* in so many words to pay the amount actually due.

Nor is there any available objection to the decree, that the reference to the master was prematurely made. The usual practice is, to settle the equities between the parties, before a reference is ordered to state the accounts between them. But if the final decree is in accordance with the equity of the case, as made by the bill, answer and proof, it cannot be reversed, whether a reference was prematurely made, or whether one was made at all or not; for no one can complain of an error, or an irregularity, unless such error, or irregularity, is injurious to his rights.

The report of the master is not objected to, as erroneous in calculation. If we were to reverse the decree, that a new reference might be ordered, the report must be the same in amount, and the final decree the same. This view shows, that there is no error that should reverse the decree, growing out of the order of reference, and the master's report. The magnitude of this case, has induced us to examine all the questions presented, and which were necessarily involved in coming to a conclusion deliberately, and the result of our opinion is, that the decree of the chancellor must be affirmed.

COLLIER, C. J.—I concur in affirming the decree of the chancellor, and acquiesce in the argument of my brother DARGAN, as to the frame of the bill, and the proceedings under it. Upon the main question in the cause, I am of opinion that the interest should not have been received by the bank at one time, for more than one year in advance, and that the complainant is entitled to the relief he prays, at least to the extent to which it has been accorded by the chancellor. I have not examined the *data* of my brother, founded upon arithmetical calculations; consequently neither assent to, nor dissent from them. My opinion is restricted to the points which I have here stated.