## Eslava v. Elmore.

*Bill in Equity by Mortgagor for Relief against Usury.*

*Equitable relief against usury; offer to do equity.*—A mortgagor, or borrower, seeking equitable relief against usury, must offer in his bill to pay the sum due or borrowed, with legal interest; otherwise, the bill is without equity, and the court cannot order an account to be taken of the mortgage debt, although the respondent declares in his answer his willingness to accept the sum borrowed with legal interest.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 10th of January, 1872, by Mrs. Celestine Eslava, against Albert Elmore; and sought to enjoin a sale of certain real estate in the city of Mobile, under two mortgages, executed by the complainant to the defendant for borrowed money; the first for $10,666, dated the 10th day of May, 1869; and the second for $1,100, dated the 1st day of April, 1870; the mortgage debts falling due, respectively, four and five months after date. The complainant alleged in her bill that the sum borrowed by her, in the first case, was $10,000, and in the second $1,000; that the excess above these sums, as specified in the notes and mortgages, was for usurious interest which she had agreed to pay; that various partial payments had been made on the debts, and that on or about the 10th December, 1871, the respondent "admitted that the amounts of interest were excessive, and that he was willing to make a new agreement in respect to said loans, which should conform to the laws." In respect to this new agreement, the bill contained the following allegations: "Said Elmore agreed that he would advance to your oratrix five thousand dollars more, and that the former loans should be considered as bearing legal interest only on the true amounts loaned, as well as on the new loan of five thousand dollars; that the former payments should be applied to the satisfaction of the said interest, computed at eight per cent. *per annum,* and the time for the payment of the principal should be further extended; that for the payment of all future interest, and for the payment of the principal, your oratrix should annually transfer and deliver to him the notes given for the rents of the mortgaged property, so that he might collect all the rents, and apply the same to the payment of the said principal and interest, until the whole should be extended, until the said mortgages were satisfied by the rents. Your oratrix charges, that this new contract was made with said Elmore, and that the whole of the foregoing transactions were made, between said Elmore and [complainant], by Julius Eslava on her part, as

her agent; and that she was, and is, ready to carry out the said new agreement, and to execute a new mortgage for the new loan of five thousand dollars, and in all things to comply with the said new agreement and obligations made by her said agent, so far as they may be lawful, and properly accord with the laws of the land." The bill alleged, also, that in violation of this new agreement, and before the same had been carried into effect, the defendant left the country, and the lands were afterwards advertised for sale, under powers of sale contained in the mortgages, by his agents in Mobile. The prayer of the bill was for an injunction of the sale as advertised, and an account of the mortgage debts; "that the new agreement herein set forth be established, and the defendant required to perform the same; and that such decree may be rendered in the case as your oratrix may be entitled to, and as may accord with the law of the land and the practice of this honorable court."

The defendant answered the bill, admitting the loans of money, the usurious interest agreed to be paid, and the partial payments which had been made, as alleged in the bill. In reference to the alleged new agreement, the answer contained these statements: "Respondent denies, positively and unequivocally, that he ever made any contract or agreement with Julius Eslava as to making a new loan of five thousand dollars, or any other amount. No such contract, or agreement, ever existed, either verbally or in writing. Respondent came from Montgomery to Mobile, in December, 1871, in consequence of hearing that the mortgaged property was advertised for sale for city taxes; and ascertained for the first time, while in Mobile, that the property had been sold for taxes in 1869 and 1870, the taxes on it at the time of the sale being over thirteen hundred dollars; and he also ascertained, at the same time, that the property was advertised to be sold for all the city taxes due on all the complainant's property. Seeing this state of things, he had a private conversation with said Julius Eslava, and told him that if he (Eslava) would pay up all the taxes on the property, and relieve it of the tax-title, and give respondent the possession of the property, respondent would make another loan of five thousand dollars, and take another mortgage for it, and, on final settlement, would charge legal interest only on all the debts. Said Eslava said that he would do this, if respondent would permit him to rent the property, collect or receive the rents, and pay them over to respondent; stating that, from feelings of pride, he did not wish to be deprived of renting the property; and on the next day, or during the same conversation, he said that he had no fears of tax-titles, as he had never heard of one but could be broken. To this sug-

[Eslava *v.* Elmore.]

gestion, or proposition, respondent made no reply whatever. This is, in substance, all that passed between respondent and said Eslava; from which respondent concluded, that, though said Eslava was willing to accept a further loan, he was unwilling to give up the possession of the property, and indifferent as to the payment of the taxes;" and the respondent then paid the city taxes himself, amounting to over five hundred dollars. The defendant offered in his answer " to take the actual amount loaned, with legal interest thereon, allowing the complainant all credits to which she is in justice and equity entitled;" and he incorporated in his answer a demurrer to the bill for want of equity, " because the complainant does not offer to pay the amount actually due, with legal interest."

On the hearing, the complainant offered no evidence; while the defendant offered in evidence the notes and mortgages, and his own deposition, which was, in substance, the same with his answer. The chancellor held, that the complainant's declaration of her willingness to abide by the new agreement, as alleged in her bill, was tantamount to an offer to do equity; and as the respondent, while denying this new agreement, declared his willingness to accept the principal of his debt, with legal interest, there was no obstacle to a decree for the foreclosure of the mortgage. He therefore rendered a decree, declaring the mortgages to be a valid and subsisting lien on the mortgaged premises, for the money loaned, with legal interest thereon, after deducting all partial payments, and for all taxes paid by the respondent; and ordered an account to be taken by the register as master, to ascertain the amount due on this basis, and a sale of the mortgaged premises, if the amount was not paid by a specified day; and also taxed all the costs against the complainant, on the ground that she had not acted in good faith. From this decree the complainant appeals, and here assigns it as error.

GEO. N. STEWART, for appellant.

E. S. DARGAN, *contra.*

BRICKELL, J. — A borrower, seeking from a court of equity relief against a usurious contract, is assisted only on the payment of what is really and *bonâ fide* due, deducting the usurious or unlawful interest. In his bill he must offer to pay the sum borrowed, with legal interest, or the defendant may demur, and the bill will be dismissed. 1 Story's Eq. § 301. The reason why the court refuses to interfere, unless the bill contains the offer to pay what is justly due, is that, in the absence of such offer, the court cannot compel the complainant to do

equity — cannot render a decree against him, for the sum he ought in good conscience to pay. If the bill contains the offer, the court is invested with jurisdiction to render a proper decree against him. *Br. Bank Mobile* v. *Strother*, 15 Ala. 51. The appellee in this case demurred to the bill, assigning specially, as cause of demurrer, that an offer to pay the sum admitted to have been borrowed, with lawful interest, was not made. The bill contains no such offer, and no recognition of the complainant's liability or willingness to pay, which would authorize the rendition of a decree against her. The demurrer should have been sustained, and the bill dismissed.

In decreeing an account of the mortgage debt, and, in the event of its non-payment, a foreclosure and sale of the mortgaged premises, the court erred. The pleadings do not authorize the rendition of such a decree. The bill contains no submission to the jurisdiction of the court, on which any other than a decree of dismissal can be rendered against the complainant. No cross-bill has been filed, and the answer of the defendant entitles him only to be dismissed the court. The decree of the chancellor is, therefore, reversed, and a decree here rendered sustaining the demurrer of the appellee to the bill of appellant, and dismissing the same.

The appellant does not stand in an attitude to invoke the favorable consideration of the court. She has not observed the good faith which the law expects a mortgagor in possession to keep towards the mortgagee. She has permitted the taxes to accumulate on the mortgaged premises, while she was receiving the rents and profits, until the mortgagee was compelled for his own protection, to avoid a sale, to pay them ; and once she permitted them to be sold, as well for the taxes assessed against them, as against other property of hers. The bill was evidently filed without any necessity, and solely to delay the mortgagee. The appellee did not claim the usury, had agreed to abandon it, and was willing to accept the principal sum loaned, and legal interest. The appellant had full knowledge of this when the bill was filed. A decree must, therefore, be rendered against her, for the costs in the court of chancery, and for the costs of this appeal.