JOSEPH M. KELLY and SAMUEL A. MARTIN, trading
as KELLY & MARTIN, vs. GERSON ROSENSTOCK and
MEYER STEIN and others.

THOMAS H. KUGLER and GEORGE W. BURNS vs. SAME.

*Mechanics' lien—What is a "Commencement of the building"
under Art. 61, sec. 15 of the Code. The omission of the day
of the Month in the date of the Acknowledgment to a Mortgage,
may be supplied by reference to other parts of the instru-
ment—Art. 24, sec. 8, of the Code.*

The lien of mechanics and others conferred by Article 61 of the Code, is by
section 15 of that Article preferred to all mortgages, &c., "which attach
upon the said building or the grounds covered thereby, subsequently to the
commencement thereof." In a contest for priority between a mortgagee and
mechanic's lien claimants, it was HELD:

That whether the work relied on as having been done prior to the mortgage
is to be regarded as a *commencement of the building*, is a question of fact to
be determined by the evidence.

C. took a lease of certain lots of ground in Baltimore County from R. and S,
and at the same time executed and delivered to them a mortgage of his
interest in the lots, to secure advances to be made to him by the lessors for
the erection of houses on said lots. The lease and mortgage were executed,
delivered and recorded on the 6th of August, 1872, and constitued one con-
current transaction. After the houses had been built the mortgagor made
default, and his leasehold interest in the property was sold under the mort-
gage. In a contest over the distribution of the proceeds of sale, as to
whether the mortgage or certain mechanics' liens were entitled to priority,
it appeared that the lessee prior to the 13th of July, 1872, and before he had
acquired any interest in the property, and before any survey had been made,
went with his foreman and a laborer and drove stakes to indicate the line of
the foundations, and at *one corner* dug or scraped away the dirt down to a

level, the whole work occupying but a part of a day. Nothing else was done on the ground after that until some days after the 6th of August, an interval of a month. HELD:

That the buildings could not be regarded as *commenced* till after the lien of the mortgage had attached.

On its face the mortgage bore date the 6th of August, 1872, professed to have been *executed on that day*, was duly attested, the attesting witness being the magistrate before whom the acknowledgment was taken, and it referred to the lease as bearing *even date with it*. The acknowledgment was before a magistrate in Baltimore City, and was in the usual form, except that the date of the acknowledgment by the mortgagor and of the affidavit by the mortgagee was certified to be "This —— day of August, A. D.; 1872." The certificate of the Clerk of the Superior Court of Baltimore City annexed to the acknowledgment was dated the 6th of August, 1872, and the endorsement on the mortgage showed that it was on that day received for record by the Clerk of the Circuit Court for Baltimore County HELD:

That from the facts appearing on the face of the instrument itself, it was clear the acknowledgment could have been taken on no other day than the 6th of August, 1872.

By the Code, acknowledgment is made essential to the validity of a mortgage, and *Art.* 24, *sec.* 8, declares that the certificate of acknowledgment "shall contain" among other things, "the time when it was taken." HELD:

1st. That when a deed is attacked for want of definiteness in this respect, the Court is not confined to the certificate, but may refer to the entire instrument or any part of it.

2nd. That the certificate of the clerk and the endorsement of recording are to be regarded as parts of the instrument to which reference may be thus made.

3rd. That by reading the acknowledgment in this connection the day of taking it appears as certainly as if it were written out in the certificate itself, and this gratifies the requirements of the law.

APPEALS from the Circuit Court for Baltimore County, in Equity.

The bill of complaint in this case was filed by Kelly and Martin, for the enforcement of a mechanics' lien claim against certain houses and lots of ground in Balti-

more County, fronting on Boundary or North Avenue. The Court (GRASON, J.,) passed a decree dismissing the bill, and from this decree the complainants appealed, as did also Kugler and Burns, parties defendants, who were also lien claimants, and were purchasers of a portion of the property sold under a mortgage. The case is further stated in the opinion of the Court.

The causes were argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J., and the decision was participated in by BRENT, J.

*James Frame*, for the appellants.

*Charles Beasten, Jr.*, for Kugler & Burns.

*J. I. Cohen* and *R. J. Gittings*, for the appellees.

MILLER, J., delivered the opinion of the Court.

The appellees, Rosenstock and Stein, being owners in fee of certain lots situated in Baltimore County, fronting on Boundary or North Avenue, leased the same to one Caskey for ninety-nine years, renewable for ever. At the same time Caskey mortgaged his interest in them to the said Rosenstock and Stein, to secure advances to the amount of $32,000, for the erection of houses on the lots. These two instruments, the lease and mortgage, were executed, delivered, and recorded on the same day, the 6th of August, 1872, and constituted one concurrent transaction. After the houses had been built, the mortgagor made default, and his leasehold interest in the property was sold under the mortgage; and now the controversy arises, whether the mortgagees or certain mechanics' liens are entitled to priority in the distribution of the proceeds of sale. The mechanics rest their claim to priority on two grounds:

1st. That the buildings were commenced before the mortgage was executed.

2nd. That the mortgage is void as against their claims, because the day of the month in the acknowledgment of it is left blank.

1st. As to the first ground : We have said in *Brooks vs. Lester*, 36 *Md.*, 70, that what the law means by the "*commencement of the building*," is "some work or labor on the ground, such as beginning to dig the foundation, or work of like description, which every one can readily see and recognize as the commencement of a building," and in *Jean vs. Wilson*, 38 *Md.*, 296, we held, that such work must be done with the intention and purpose *then formed* to continue it to the completion of the building, and that work done on the ground without any design or purpose of constructing a building *at that time*, and which was intermitted, is not sufficient. Whether the work here relied on as having been done prior to the mortgage, gratifies these requirements, is purely a question of fact, to be determined by the evidence in the record. We have carefully examined the testimony on this subject, and especially that relied on by the claimants, and the result of that examination is this: The surface of the ground in this locality is much below the grade of the avenue, and the bank of the latter slopes down upon these lots. According to the testimony of the claimants' witnesses, Caskey some time prior to the 13th of July, before he had acquired any interest in the property, and before any survey of them had been made, went with his foreman and a laborer to the lots, and drove stakes to indicate the line of the foundations, and at *one corner* dug or scraped away the dirt of the slope down to a level. What was thus done occupied but a short time, only part of a day. Caskey himself calls this work grading, but says it was done in order to prepare the plans, to get the depth by: that it was quite a deep place below the avenue, and we

could not tell the depth until we graded to a level, and that it was done before he notified Rosenstock and Stein of his intention to accept their offer of the land. The foreman says it was preparation for digging foundations; the object was merely to get a level; we laid off the foundations; the digging was done to govern the future digging of the cellar-diggers—as a starting point to level from; we only removed one corner to get the bottom of the cellar, to get the level; no survey had been made at that time; we sought the location of the property by guesswork, governed in some degree by surrounding property, and drove such stakes as were necessary to indicate the foundations, and that after this he made the drawings for the buildings. Another witness describes it as measuring the width of the front, and at the same time levelling along the railroad track, or something of that kind. Now, assuming these witnesses to have correctly stated the time at which this work was done, they fix it at an earlier date than the 13th of July, and it is quite clear that nothing else was done on the ground after that until some days after the 6th of August, an interval of a month. Looking to the nature of the ground, and the character of the work thus described, it is more than probable that no trace of this slight digging or scraping of a sloping artificial bank of earth, made before the 13th of July, could have been recognized on the 6th of August. It was very unlike digging to the same extent into the natural surface of the ground, and we are well satisfied that if a party had examined these lots on the latter day, for the express purpose of seeing whether he could safely take a mortgage upon them, he would have seen nothing which he would readily have recognized as the commencement of a building. We therefore have no hesitation in giving credit to the witnesses, interested in this particular point, who saw the property daily, and who swear positively they saw no work upon the ground until after the 6th of August, and

that the buildings were not commenced until after that date. For these reasons, and apart from other considerations pressed in argument, we cannot sustain this position of the claimants.

2nd. As to the second ground: On its face the mortgage bears date the *6th of August*, 1872, professes to have been *executed on that day,* is duly attested, the attesting witness being the magistrate before whom the acknowledgment was taken, and it refers to the lease as bearing *even date with it.* The acknowledgment was before a magistrate in Baltimore City, who therein certifies, "that on this —— day of August, A. D., eighteen hundred and seventy-two, before me, the subscriber, a justice of the peace of the State of Maryland, in and for the City of Baltimore, personally appeared David W. Caskey, and acknowledged the aforegoing mortgage to be his act," and that, at the same time, also personally appeared before him the mortgagees, and made oath that the consideration of the mortgage "is true and *bona fide* as therein set forth." Then follows a certificate of the Clerk of the Superior Court, dated the *6th of August*, 1872, that the party "before whom the annexed *acknowledgment and affidavit were made,* was, *at the time of so doing* " a duly commissioned and sworn justice of the peace of the State, in and for the City of Baltimore. The instrument also bears the endorsement, "Recorded *August 6th*, 1872, *and examined,*" placed thereon by the Clerk of the Circuit Court for Baltimore County, in which county the lots were situated. From these facts appearing on the face of the instrument itself, it is clear the acknowledgment could have been taken on no other day than the 6th of August, 1872. They definitely establish the fact, that it could not have been made before or after that date. By the Code acknowledgment is made essential to the validity of a mortgage, and Art. 24, sec. 8, declares that the certificate of acknowledgment "shall contain" among other things, "the time

when it was taken." But when a deed is attacked, for want of definiteness on this subject, the Court is not confined to the certificate, but may refer to the entire instrument, or to any part of it. This principle was clearly laid down by the Supreme Court in *Carpenter vs. Dexter*, 8 *Wallace*, 526 "In aid of the certificate," (say the Court in that case,) "reference may be had to the instrument itself, or to any part of it." To determine whether it conforms to the law, it is to be "read in connection with the deed itself." The certificate of the clerk, in a case like this, and recording, are made by the same Article of the Code just as essential as acknowledgment. We therefore regard the certificate of the clerk and the endorsement of recording, as forming parts of the instrument, to which reference may be thus made. By reading the acknowledgment in this connection, the day of taking it appears as certainly as if it were written out in the certificate itself; and this, in our opinion, gratifies the requirements of the law. In so deciding, we in no wise disturb any previous adjudications in this State upon that or like questions. Confining, as we do, our decision to the case before us, we by no means intimate an opinion that evidence, extrinsic the deed, could be resorted to in order to fix the date, or that the acknowledgment would be valid, if from the face of the instrument, there was room for any uncertainty as to the day on which it was taken. In this view of the case, it becomes quite unnecessary to determine whether the mortgage could be sustained upon any of the other grounds relied on by the appellees' counsel.

*Decree affirmed.*

(Decided 14th December, 1876.)