(80 South. 476)

LAUDERDALE POWER CO. v. PERRY.
(8 Div. 82.)

(Supreme Court of Alabama. Nov. 28, 1918.)

1. APPEAL AND ERROR ⬯1078(4) — ASSIGNMENTS OF ERROR — WAIVER — FAILURE TO ARGUE.

Assignments of error relating to introduction of evidence, where not argued, will not be considered by court.

2. SPECIFIC PERFORMANCE ⬯128(1)—RELIEF —DAMAGES.

A court of equity decreeing specific performance may award complainant damages shown to have proximately resulted from respondent's breach, where law and justice require it.

3. VENDOR AND PURCHASER ⬯3(4)—"OPTION."

An "option" is neither a sale nor an agreement to sell, but a contract by which owner of

property agrees that another will have a right to buy that property for a fixed consideration within a prescribed time.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Option.]

4. VENDOR AND PURCHASER ⬯78—PERFORMANCE WITHIN REQUIRED TIME.

Where owner agrees to sell land at stipulated price in consideration that purchaser commences to develop water power within prescribed time, and time for payments or for commencement of water power development are made essence of contract, purchaser, to secure his rights under the contract, must perform his part thereof within stipulated time.

5. VENDOR AND PURCHASER ⬯18(½)—CONSTRUCTION OF CONTRACT—OPTION.

Contract, whereby owner agreed to sell land at stipulated price, in consideration that purchaser commences to develop certain water power within prescribed time, and providing that upon purchaser's failure to commence within such time contract would be null and void with no damages accruing to purchaser, permitted purchaser to withdraw within time limit fixed without incurring damage therefor, and was mere option to purchaser and promise by owner to sell on purchaser's compliance with contract within prescribed time.

6. VENDOR AND PURCHASER ⬯18(4)—OPTION —NONPERFORMANCE—RIGHTS OF OPTIONOR.

Owner, who had given option to purchase land upon optionee's agreement to pay purchase price within stipulated time and commence development of water power within prescribed time, could give third party option upon optionee's failure to comply with terms of option within required time.

7. VENDOR AND PURCHASER ⬯18(3)—OPTION —TENDER—EXCUSE.

An optionee, who under terms of the option has taken possession, is not excused from tender within the stipulated time by the mere fact that the optionor has wrongfully retaken possession.

8. VENDOR AND PURCHASER ⬯18(3)—CONSTRUCTION OF OPTION—"COMMENCE ACTUAL OPERATIONS IN DEVELOPING WATER POWER."

Optionee, having right to purchase land provided he "commence actual operations in developing" water power, did not comply with such condition by making surveys, profiles, and drawings, or in making preliminary experiment and constructing temporary small power plant for purpose of illustrating possibilities of the water power, or in seeking to interest capitalists in development of such water power.

9. CONTRACTS ⬯280(1) — PERFORMANCE — "COMMENCEMENT."

The actual "commencement" of a contracted work or improvement in lands must be in pursuance of a design and plan to do the work contracted or to erect the improvements or to make the development in question, done with a present intention or purpose then formed in good faith to continue such work, development,

or improvement to its completion as per contract requirements.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Commencement.]

10. VENDOR AND PURCHASER ⊜⟷18(3)—OPTION—PERFORMANCE OF TERMS.

Where owner of land grants option to purchase land upon optionee's commencement of water power development within stipulated time, but within life of option makes optionee's compliance with such condition impossible, optionee is not required to proceed further with the work to retain rights under the option.

11. SPECIFIC PERFORMANCE ⊜⟷128(3) — DENIAL OF DECREE OF PERFORMANCE—RELIEF TO COMPLAINANT.

Equity in denying specific performance of land contract will require respondent to repay complainant for improvement made on the land, but will not require reimbursement of sums expended for surveying, platting, and advertising property for sale; such expenditures not improving property.

12. EQUITY ⊜⟷66—MAXIM.

He who seeks equity must do equity.

Appeal from Circuit Court, Lauderdale County; C. P. Almon, Judge.

Bill by the Lauderdale Power Company against F. M. Perry. Decree of dismissal, and complainant appeals. Affirmed.

R. T. Simpson, of Florence, and John S. Stone, of Birmingham, for appellant.

Mitchell & Houghston, of Florence, for appellee.

THOMAS, J. The purpose of the bill is to secure specific performance of a contract, and damages for its breach.

[1] We will not discuss assignments of error relating to the introduction of evidence, where not argued. Georgia Cotton Co. v. Lee, 196 Ala. 599, 603, 72 South. 158; Johnson v. State, 152 Ala. 93, 44 South. 671; Republic I. & S. Co. v. Quinton, 194 Ala. 126, 69 South. 604; W. U. Tel. Co. v. Benson, 159 Ala. 254, 264, 273, 48 South. 712.

The original contract of July 3, 1914, related to a sale of the lands in question; and there were several modifications and extensions thereof, to and including that of February 16, 1916, wherein is used the expression, "If this money is not paid within fifty days this proposition is void." Complainant insists that by this the parties entered into a contract of sale, and not one of mere option to purchase the lands; that under the pleading and the evidence specific performance of such modified contract may be compelled by a court of chancery, which, assuming jurisdiction for this purpose, will proceed to a decree for the damages shown to have proximately resulted to complainant by reason of respondent's breach.

[2] There is no doubt of the jurisdiction and right to exercise such power by a court of equity, where the law and justice of the case require. Masberg v. Granville, 75 South. 154, 157;[1] Hicks v. Meadows, 193 Ala. 246, 255, 69 South. 432; A., T. & N. Railway Co. v. Aliceville Lumber Co., 74 South. 441, 445;[2] Whaley v. Wilson, 112 Ala. 627, 631, 20 South. 922; Hundley v. Harrison, 123 Ala. 292, 26 South. 294; Tygh v. Dolan, 95 Ala. 269, 10 South. 837; Marshall v. Marshall, 86 Ala. 383, 5 South. 475; Stow v. Bozeman's Ex'rs, 29 Ala. 397, 402, 403; Sims' Ch. Pr. §§ 20–24.

The original contract and its several modifications or extensions, photographs, plats, and profiles, are made exhibits to pleadings or to the depositions of witnesses.

[3] This court has made a distinction between (1) a sale of lands where the present conveyance thereof becomes the executed contract, and (2) an agreement to sell lands by a contract to be performed in the future and if fulfilled results in a sale; and (3) what is generally called an "option"—which is originally neither a sale nor an agreement to sell—a contract by which the owner of property agrees with another that he will have the right to buy that property for a fixed and lawful consideration and within a certain time prescribed. Fulenwider v. Rowan, 136 Ala. 287, 303, 304, 34 South. 975; Bethea v. McCullough, 195 Ala. 480, 484, 487, 70 South. 680; Borst v. Simpson, 90 Ala. 373, 7 South. 814; T. & C. R. Co. v. East Ala. Ry. Co., 73 Ala. 426, 440.

In the Fulenwider Case, supra, it was quoted approvingly as follows (Ide v. Leiser, 10 Mont. 5, 11, 12, 24 Pac. 695, 24 Am. St. Rep. 17):

An agreement to sell lands is "a contract to be performed in the future, and, if fulfilled, results in a sale. It is a preliminary to a sale, and is not the sale. Breaches, rescission, or release may occur, by which the contemplated sale never takes place. * * * An option, originally, is neither a sale, nor an agreement to sell. It is simply a contract, by which the owner of property (real estate being the species we are now discussing) agrees with another person that he shall have the right to buy his property, at a fixed price, within a time certain. He does not sell his land; he does not then agree to sell it; but he does then sell something, viz., the right or privilege to buy at the election, or option of the other party. The second party gets in præsenti, not lands, or an agreement that he shall have lands, but he does get something of value; that is, the right to call for and receive lands if he elects. * * * The sale of an option is an executed contract. That is to say, the lands are not sold. The contract is not executed as to them, but the option is as completely sold and transferred in præsenti as a piece of personal property instantly delivered on payment of the price."

This definition of an option on lands was again approved in the Bethea Case, supra,

where the decision rested on the fact that the instrument there in question operated to pass title in præsenti and before the compliance with the future conditions therein provided. The court said:

"Considering the instrument now before us as an agreement to make such title as the instrument purports to pass in præsenti, the only ground of discrimination between the agreement and an option as thus defined is that, whereas an option contemplates the passing of title in futuro, this instrument witnessed an intention to vest in præsenti, an estate in fee subject to be defeated upon condition. * * * Recurring then to the definition of an option in Fulenwider v. Rowan, and looking to the substance of things, rather than to mere form, we have been unable to settle upon any essential difference between the right of Bethea during the agreed life of his option and that of an optionee, commonly so called, whose contracts courts of equity are accustomed to enforce." Masberg v. Granville, supra.

General authorities on the subject are collected in Pollock v. Brookover, 60 W. Va. 75, 53 S. E. 795, 6 L. R. A. (N. S.) 403; Bowen v. Lansing, 57 L. R. A. 651, notes; Worthing Corporation v. Heather, 4 British Rul. Cas. 280–293.

[4] On authority of the Fulenwider, and other cases, it was recently observed that whether parties to a contract have stipulated for dependent or independent covenants, in respect to the obligations assumed thereunder, is a matter of common intention of the parties to be collected from the instrument itself, "together with the circumstances surrounding the parties at the time and those attending the engagement they make, and in the light of the common sense of it." Jones v. Lanier, 73 South. 535;[3] McCormick v. Badham, 191 Ala. 339, 343, 67 South. 609; First National Bank of New Brockton v. McIntosh, 79 South. 121.[4] When the several written instruments in question are so considered, if the parties have made time the essence of the contract, in which payments are to be made or in which to commence actual operation in the development of the middle water power and to continue that development "until the same is completed," in order to make available to the power company the right secured by the contract, it is necessary that the acts on its part therein stipulated to be done should have been performed within the time required, or have been commenced and in good faith developed or prosecuted to the end that the contract be completed. Fulenwider v. Rowan, supra; Acker v. Bender, 33 Ala. 230; Larry v. Brown, 153 Ala. 452, 458, 44 South. 841; Lowy v. Rosengrant, 196 Ala. 337, 71 South. 439, 442, 443; Lysle Milling Co. v. North Ala. Grocery Co., 77 South. 748;[5] Terrell v. Nelson, 177 Ala. 596, 58 South. 989. It has been held, of the time of payment and of the doing of the required acts, under the

contract provided for the benefit of the party granting the option, that such conditions precedent are subject to waiver by the party for whose benefit they were inserted. Appellant's position as to this is that the contract here was not a mere option; but that, should it be held to be an option, its conditions precedent were waived by the party of the first part. Lowery v. Peterson, 75 Ala. 109, 113; Garrison v. Glass, 139 Ala. 512, 517, 36 South. 725; Larry v. Brown, supra.

The original contract (of July 3, 1914) recited a nominal consideration paid, and the further consideration that the said N. F. Thompson "will bring to the attention of capitalists the above-mentioned water power, and that he will proceed at once to develop the water power and get ready to subdivide said lands," and within four months from the date of the instrument "commence actual operations in developing the water power, that is the middle power, and to continue to develop until the same is completed."

The purchase price for the land was fixed at $40 per acre to be paid within three years from date of contract, with interest thereon until paid; said Perry agreeing "to make a deed with general warranty to the said lands when all the purchase money is paid." A stipulation as to time of payment was that—

"If within three years from this date, there has been paid on account of this purchase twenty-five thousand dollars, then the time of payment of the balance shall be extended for two years, it being fully understood that the interest on this entire purchase is to be paid annually on the third day of July each year."

By way of an addendum to this contract, and of same date, a further provision is made for the release of certain of the lands when sold by Thompson at the rate of $40 per acre, and the significant provision added that—

"If actual work has not commenced on the development of the water power herein stipulated within the period of four months, then this contract shall be null and void and no damages shall accrue to the said N. F. Thompson and his associates."

On the 7th day of August, 1914, the parties executed a further instrument reciting omissions from the original contract, together with desired changes, securing to Perry the right of removal from the flouring mill the machinery, engine, boiler, and fixtures, and also the sawmill; with the provisions that if at the end of three years one-half of the purchase price, at the rate of $40 per acre, should be paid by the said Thompson and his associates, the latter should have two years longer to carry out the provisions of the contract, "the interest being paid annually on whatever balance there is remaining"; that the four months' period in which to "commence operations on said property" should be

extended to six months; that, if it should become necessary during said development of the water power to bond the property to secure money with which to develop the same, Perry and wife would make a general warranty deed, provided the "entire purchase price at the rate of $40 per acre" should have been paid, with the accrued interest thereon. It was further provided that—

"If after the company is incorporated and organized the said Perry shall convey the property to John O. Dabney, trustee, with the agreement expressed on the face of the deed, that the trustee shall convey the property, or such parts thereof, as the corporation shall dispose of, upon the payment to the trustee of forty dollars per acre for such lands so sold. The said trustee shall be authorized and empowered to convey said lands or parts thereof when the purchase price named above shall have been paid by the purchaser of the same or the said Thompson or his associates or assigns. All such separate payments to be and become a credit on the sum total of the entire property, and when such payments aggregate the sum total purchase price, to wit, at the rate of forty dollars per acre, the said trustee shall convey the remainder of the property to the said corporation thus chartered and organized, or to its assigns. The money when paid to the trustee shall be paid over to F. M. Perry."

On November 5, 1914, a further instrument was executed, reciting the agreement of July 3, 1914, between Perry and Thompson; the assignment by Thompson of his rights under the contract to the Allentown Power Company, and its consolidation with the Lauderdale Power Company; and further reciting that work was to commence on the same on or before the 3d day of December, 1914, and that said Perry, "feeling that the matter of development has been pushed in good faith, but owing to the financial condition the work has been retarded," did thereby grant a further extension of the time within which said work was to commence, until the 3d day of January, 1915.

A short while before the expiration of the foregoing time limit, Perry and the Lauderdale Power Company, on the 30th day of September, 1914 (according to exhibit to Allen's testimony), further agreed, in consideration of the fact that the party of the second part had undertaken in good faith to carry out the conditions of the original contract of date July 3, 1914, as thereafter supplemented, that there should be an extension of "the time stipulated in said contracts until twelve months from this date." The purchase price for the lands was fixed at $50 per acre, with interest thereon from the 3d day of July, 1914, until paid. It was further expressly agreed that—

"In all other respects the contract and the supplement are to stand and be in full force as is stipulated therein, engine, boiler, gin to be taken out by said Perry."

The foregoing extension appears as of date September 30, 1914, per copy attached as exhibit to deposition of Thurston H. Allen, and as of date December 30, 1914, per copy attached as exhibit to deposition of F. M. Perry. This discrepancy is explained by reference thereto contained in the further extension of date June 15, 1915, wherein the true date of the foregoing extension is declared to have been December 30, 1914.

In the extension of June 15, 1915, Perry and the Lauderdale Power Company again make reference to the original and amended contracts for the development of the water power and "the lands going with said water power," to the extension of the time for commencement of the work on said development for 12 months from December 30, 1914, to the former stipulation that interest be paid on the 3d day of July of each year, and to the fact that failure to so pay interest was not made a condition for forfeiture of the contract; and, "to remove all doubt in regard to the payment of the interest on the said sums of money stipulated to be paid by said contracts," it was declared to be "fully understood and agreed that the interest on the said sums shall be payable on the 30th day of December, 1915," and that "the understanding of the parties hereto that in the extending of the time for the commencement of the work to the 31st day of December, 1915, the time for the payment of the interest was also extended to that time," otherwise "the contract, with the various extensions and alterations, is to remain and be the same as it stands in the original papers."

It is to be noted of this modification that the recited primary purpose was to remove doubt in regard to the payment of the interest on said sums of money stipulated to be paid, and to fix a subsequent date (December 30, 1915) at which interest would accrue and be required to be paid—the new date the parties expressly agreed upon as the time for commencement of the work of development of the water power—and that "in all other respects" the contract remained unchanged. Lastly, that on the 16th day of February, 1916, in response to Lauderdale Power Company's request, Perry agreed to a separation of the water power from the other interests in the lands if sale was desired in such separate parcels, and that it was also agreed that if the $25,000 specified for the water power was not paid within 50 days "this proposition is void."

The bill avers that on August 1, 1916, Perry and wife executed and delivered to one Elting an option on the same properties; that on the 5th day of September, 1916, complainant informed defendant that the execution and delivery of the option to Elting had interfered with the efforts of complainant to develop and sell the properties in question and would continue so to do; that de-

fendant then denied that complainant had any rights in the properties under the several contracts above recited. The further averment is contained in the bill that on December 22, 1916, complainant informed Perry it was ready, able, and willing to comply with all the terms and conditions of said contract and written agreements, and desired to proceed with the consummation thereof; and that defendant denied that complainant held any right under said written agreements and would not recognize any claim of complainant to said property. The further averment is made that—

"At that time the complainant was ready, willing, and able to perform all the acts then incumbent on it to perform under and by virtue of said contract and written agreements, and has been ready, willing, and able to perform all of such acts ever since that time, and is now ready, willing, and able to perform all of such acts. And the complainant now offers to perform all such acts."

[5, 6] The fair interpretation of this contract is that it secured the party of the second part, his successors and assigns, in the right of failure to develop, or, as for that, in the right to withdraw at pleasure from the enterprise, within the time limit fixed, without incurring damage therefor. Such being the fact, it was not more than a mere option to such party and a promise, by Perry, to sell on compliance therewith by such second party or assigns. Jones v. Lanier, supra. Such provisions in behalf of the purchaser are found in the last clause of the addendum to the original contract of date July 3, 1914, wherein it is stipulated that, if actual work is not commenced on the development of the water power within the period indicated, the "contract shall be null and void, and no damages shall accrue to the said N. F. Thompson and his associates." It is true that the time within which work should commence in the development of water power was extended from four to six months, and thereafter to twelve months from the date of December 30, 1914. In no one of the extentions of and to the original contract is there a modification of that provision stipulating that Thompson and associates shall not be subject to damages by reason of their failure to commence actual work on the development of the water power as required by the contract. This indicates the intention of the parties, and is sufficient answer to complainant's insistence that the rights secured by the original writing of July 3, 1914, and the subsequent additions thereto, or modifications thereof, were not in the nature of an option that might be exercised by the second party within the time limit and on compliance with the conditions prescribed. That is to say, it was not the intention of the parties to enter into an agreement to sell the lands, as our court has defined the expression, "agreement to sell lands by a contract to be performed in the future," but was rather a mere option, given by Perry to Thompson, to purchase the lands on conditions, by which the right was given to that purchaser to obtain the property on payment of the fixed price and by the performance of the required acts within the time specified. In all the modifications and extensions, this significant provision for the protection of the party of the second part, Thompson or assigns, against any claim by Perry for damages resulting to the latter from the failure of the former to purchase the water power and the adjacent lands in question, remained unaltered. Perry did what he reasonably could to enable Thompson and associates or assigns to effectuate the purchase; and then, when his patience was apparently exhausted, and after the expiration of all extended time limits, he gave Elting the option. No contract right then secured to Thompson's assigns or associates was violated by Perry.

[7] The evidence fails to show payments by complainant to respondent of the amount of the purchase price for all or any of the lands, or an offer to pay, within the time limit stipulated by the parties; or that complainant was ready, willing, and able to do so; or that it was prevented by respondent from so paying within the time stipulated in the contract. An optionee, who, under the terms of the option, has taken possession, is not excused from tender within the stipulated time by the mere fact that the optionor has wrongfully retaken possession. Clarno v. Grayson, 30 Or. 111, 46 Pac. 426; Rude v. Levy, 43 Colo. 482, 96 Pac. 560, 24 L. R. A. (N. S.) 91, 95, 96, 127 Am. St. Rep. 123.

[8] As to the provision for making deed to a trustee, the evidence also fails to show that any demand was made that deed be executed to the trustee, Dabney, as provided in one of the modifications of the contract, or that the trustee was requested to convey the same as the corporation disposed of any part of the land when the purchase price was paid by purchaser or Thompson, or Lauderdale Power Company. We are not of the opinion that the making of the several surveys, profiles, and drawings, or of the topographical map of the drainage area, or of the plat of the proposed site of Allentown, or the making of the crude preliminary experiment in the development of the water power at the "middle power," or all of said acts, was that development of the water power in question made a necessary and binding condition precedent under the contract. A like result follows, as to the failure to pay any portion of the principal sum of the purchase price and accrued interest thereon, as provided for and required by the modified agreement of the parties. This is the intention of the parties expressed in the original contract and the amendments thereto.

[9] It is unnecessary to cite authorities as to the meaning of the phrase "commence

actual operations in developing of the middle water power and to continue to develop until the same is completed." However, for analogous authorities, it is interesting to note that the commencement of a building within the lien statutes has been held to be the actual breaking in good faith of the ground for the building—thus changing the appearance of the ground so as to show the proposed work. James v. Van Horn, 39 N. J. Law, 353; Mutual B. L. Ins. Co. v. Rowand, 26 N. J. Eq. 389, 392; Brooks v. Lester, 36 Md. 65, 70; Kelly v. Rosenstock, 45 Md. 389, 392; Jacobus v. Mut. Ben. Life Ins. Co., 27 N. J. Eq. 604, 606. The actual commencement of a contracted work or improvement in lands must be in pursuance of a design and plan to do the work contracted or to erect the improvements or to make the development in question, done with a present intention or purpose then formed, in good faith to continue such work, development, or improvement to its completion as per contract requirements. Work done on the ground, without any design or purpose then formed to develop the water power in question at the place and within the time required by the contract, or which was intermittent, superficial, or merely experimental, was not a sufficient and binding commencement of actual operations in the development of the middle water power and the continuation thereof until the same was completed, or until complainant was prevented by respondent from continuing or completing the development within the life of the option. Kelly v. Rosenstock, supra; Mortgage Co. v. Weyerhaeuser, 48 Kan. 335, 342, 343, 29 Pac. 153; Pennock v. Hoover & Myers, 5 Rawle (Pa.) 291; Garner v. Hall, 122 Ala. 221, 25 South. 187.

So much, by way of analogous authorities upon the general definition of the word "commencement," in conditions as to the time of the beginning of the construction or work upon a proposed building or plant.

In the instant contract, the parties made plain their meaning as to good faith in the development and construction of the water power plant, required of the party of the second part, by the use of the unequivocal words and expressions, "actual operations," "developing," and "continue to develop until the same is complete." When the contract is construed by its four corners, the intention of the parties as to what acts on the part of the second party should constitute a bona fide compliance with the provisions for the development of the middle water power is placed beyond successful controversy.

It is true that a crude, superficial, or temporary small electric power plant was constructed by the complainant, with materials much of which were obtained by it from Perry, and having for its only purpose illustration of the desirability of water power

that might be developed or generated at the designated point. It was not a permanent development of the middle water power, nor intended as such; it was not an execution in good faith of that contract provision for continuous development of the water power there agreed to be undertaken by the party of the second part.

[10] If the respondent, within the life of the option, made the completion of the development impossible by complainant, the latter would not be required to proceed further with the work of that development. Lowy v. Rosengrant, 196 Ala. 337, 71 South. 439; Russell v. Bush, 196 Ala. 309, 71 South. 397; Terrell v. Nelson, 177 Ala. 596, 58 South. 989. However, the evidence shows no such interference by Perry, within the life of the contract, but, rather, that he sought to give complainant ample time (evidenced by his extensions) within which to purchase respondent's properties.

We are of the further opinion that, notwithstanding the effort of parties of the second part to advertise and bring to the attention of capitalists the desirability of the water power and adjacent town site, such activities did not constitute a development of the water power and a continuation thereof to completion within the contemplation and meaning of the parties to the mere option for the purchase of the properties in question within the time limit prescribed.

No fair construction of the evidence will show a waiver by Perry of the conditions precedent, such as would authorize a court of equity to require that he do so, on payment of the sum stipulated, with interest thereon.

No good purpose will be subserved by a detailed discussion of the evidence, it being sufficient to say that the same has been carefully considered to the end we have indicated.

[11] In the light of the construction given the contract, and with due regard to the weight of the evidence, we are of the opinion that there is no occasion for the application of the established rule of chancery, requiring a respondent to repay for the improvement of the real properties, the subject of the litigation. No such improvements have been made by complainant here. On his own responsibility, complainant expended large sums in advertising, surveying, platting, and presenting the property to respective purchasers of city lots and the water power. He cannot have a lien fixed on these lands for any other expenditure made in that behalf, or in the futile attempt to purchase and sell the properties. Williams v. Kilpatrick, 195 Ala. 563, 70 South. 742, 744.

[12] We have preferred to rest the decision upon the merits, rather than upon the sufficiency of the pleading. It will not be necessary to decide whether the bill contains

a sufficient offer to do equity, as required by the maxim, "He who seeks equity must do equity." Coburn et al. v. Coke et al., 193 Ala. 364, 367, 69 South. 574; Sims' Ch. Pr. §§ 292, 293; Eslava v. Elmore, 50 Ala. 587, 590; Branch Bank of Mobile v. Strother, 15 Ala. 51, 61.

The decree of the circuit court that complainant is not entitled to relief and dismissing the cause at complainant's cost, and that respondent go hence discharged, is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.