[No. 4511.]

## THE STOCKTON AND VISALIA RAILROAD COMPANY v. THE CITY OF STOCKTON ET AL.

SUBSIDY IN BONDS TO A RAILROAD.—If a subsidy in bonds is granted by a city to a railroad company to aid in the construction of a railroad from the city in the direction of another city, the bonds to be delivered when a certain number of miles of railroad are constructed, the company does not forfeit its right to the subsidy by the fact that it purchases and adopts as a part of its line a section of a railroad already constructed on a portion of the route on which the proposed railroad was to be built.

FORFEIT OF A SUBSIDY GRANTED TO A RAILROAD COMPANY.—If a subsidy in bonds is granted by a city to a railroad company, to aid in the construction of a railroad from said city through the county in which it lies, up the valley of a river in the direction of a town in another county which

lies south of the city, the company does not forfeit the subsidy by the fact that the first few miles of railroad runs east from the city, and then turns south, provided it is built in the valley of the river and in the direction of the town.

DUTY OF OFFICER.—If an official duty is to be performed by an officer on the happening of an event, he cannot capriciously refuse to perform it on the plea that he is not satisfied that it has happened. If the fact exists and is established by proof, it is his legal duty to be satisfied and perform the act, and mandamus will lie.

APPEAL from the District Court, Fifth Judicial District, County of San Joaquin.

The San Joaquin River takes its rise at a point over two hundred miles a little southeasterly from the city of Stockton. It drains the country lying between the Sierra Nevada Mountains on the east, and the Mount Diablo range of mountains on the west. The country between these ranges of mountains is called the San Joaquin Valley. The valley proper is about thirty miles in width, and the low foothills of the mountains on either side are several miles in width. Stockton is built midway the valley, on a slough of the river, a few miles from where it empties into the head of Suisun Bay. The Stockton and Visalia Railroad Company was a corporation organized prior to December, 1869, for the purpose, according to its articles of association, of constructing and maintaining a railroad from the navigable waters, in the city of Stockton, county of San Joaquin, through said county, and the counties of Stanislaus, Merced, Fresno and Tulare, to a point at or near the town of Visalia, in said county of Tulare. The Stockton and Copperopolis Railroad Company was also a corporation organized in 1865, for the purpose, according to its articles of association, of constructing and maintaining a railroad from the city of Stockton, in the county of San Joaquin, through said county and the counties of Stanislaus and Calaveras, to the town of Copperopolis, in Calaveras County. Copperopolis is in the county of Calaveras, forty-seven miles a little north of east from Stockton. Visalia is in Tulare County, about one hundred and sixty miles a little east of south from Stockton, and is in the San Joaquin Val-

ley.  On the 2d day of March, 1867, Congress passed an act granting public lands in alternate sections, on either side of the road, to aid in the construction of a railroad from Stockton to Copperopolis, and designating the Stockton and Copperopolis Company as the corporation entitled to the grant, provided the Legislature of this State designated it as the company to be vested with the grant.  The Legislature did so designate it.  On the 13th day of September, 1867, the Stockton and Copperopolis Company filed a map in the office of the Secretary of State,' designating the line of its road, by which the same ran from Stockton a little north of east to the town of Peters, and thence to Copperopolis.  The latter company acquired the right of way for its road to Milton, and, in 1866, graded eleven miles of its road between Stockton and Peters.  Work was not resumed on the road until November, 1870, and the railroad was completed to Peters in February, 1871, and to Milton in September, 1871.  It has not been extended beyond Milton, and, as a part of the political history of the country, I will state that Congress, since this case was tried in the District Court, has declared its land grant forfeited.  The Legislature passed an act, approved April 1, 1870, requiring an election to be held in Stockton, to decide upon a proposition for said city to issue to the Stockton and Visalia Railroad Company three hundred of its bonds, of one thousand dollars each, bearing interest at seven per cent. per annum, payable in twenty years, to aid in the construction of a railroad from the water front of said city, through the county of San Joaquin, and up the San Joaquin Valley, in the direction of the town of Visalia, county of Tulare.  If the election was favorable, the bonds were to be issued by the council of the city, and delivered to G. W. Kidd, B. W. Bours and J. M. Kelsey, who were to hold them as trustees for the following use: When the trustees received a written verified statement of the president of the company, that the track had been laid for the distance of five miles from the water front of the city, and that cars and engines were running over the same; and when they received the written statement of the council of the city that

said five miles had been constructed and the track laid in a manner and of a character acceptable to them, and that the same was properly stocked, then the trustees were to deliver to the company one hundred of the bonds; so in like manner upon the completion of a second and third five miles; and upon receiving the written statements, the second and third one hundred bonds were to be delivered. An election was held under the act, and the result was favorable to the issuance of the bonds. The council caused them to be made, and delivered them to the trustees.

The Stockton and Visalia Railroad Company did not file a map or profile of their railroad with the Secretary of State, but, after the result of said election, and after the bonds were delivered to the trustees, constructed a railroad from Peters, up the San Joaquin Valley, in the direction of Visalia, for a distance of nineteen miles and a quarter, to Oakdale, beyond the southern line of San Joaquin County, which was completed on the 20th of September, 1871. On the 28th of September, 1871, the Stockton and Copperopolis Railroad Company, pursuant to a resolution passed by its Board of Directors, conveyed to the Stockton and Visalia Company its railroad from the water front in Stockton to Peters. The latter company did not lay out, or project, or construct a railroad from Stockton to Peters, and had not built any railroad except that from Peters to Oakdale. From Stockton to Visalia, in a direct line, the country is level and entirely practicable for a railroad. The Stockton and Visalia Company, on the 16th of October, 1871, requested the council of Stockton to give the written statement required by the act, but the council refused.

This action was commenced on the 28th day of March, 1873, and the members of the council of Stockton, its mayor, and the president of its council, and the trustees holding the bonds, were made defendants along with the city. The plaintiff asked for a writ of mandate directing the council of Stockton to make the written statement required by the act, and to deliver it to the trustees, and requiring the trustees, upon receipt of the same, to deliver to it the bonds. The court denied the writ, and the plaintiff appealed.

*Greathouse & Haggin, D. S. Terry, and W. H. Patterson,* for the Appellant, argued that the court below did not construe the act of 1870 correctly, and cited *Thompson* v. *The New York and Harlem Railroad Co.,* 3 Sand. Ch. 655 6; and that the Stockton and Visalia Company had a right to make the purchase, and cited *Stockton and Visalia Co.* v. *Stockton,* 41 Cal. 168; and that the conveyance was good for the roadbed, rails, ties, depots, buildings, etc., and that it was not necessary to have it carry the franchises of the grantor; and cited *Donner* v. *Dayton & Cin. R. R. Co.,* 1 Cin. Supr. Ct. R. 139; *Bruffett et al.* v. *Great Western R. R. Co.,* 25 Ill. 356–7; *State* v. *Rives,* 5 Iredell (Law), 306; *Arthur* v. *Coml. R. R. Co.,* 9 S. & M. (Miss.) 431–2; *Commonwealth* v. *Wilkinson,* 16 Pick. 176; *Williams* v. *The N. Y. Cen. R. R. Co.,* 16 N. Y. 108; *Wager* v. *Troy Union R. R. Co.,* 25 N. Y. 533; and *Milhau* v. *Sharp,* 27 N. Y. 620; that it was sufficient if there was no statute prohibiting the sale, and cited *State* v. *Rives,* 5 Iredell, 305; *Donner* v. *Dayton and Cincinnati R. R. Co.,* 1 Cincinnati Superior Court, 139; *Bruffett* v. *Great Western R. R. Co.,* 25 Ill. 356–7; *Barlow* v. *Chicago R. I. & P. R. R. Co.,* 29 Iowa, 280; *Miller* v. *R. & W. R. R. Co.,* 36 Vermont, 488, 491–2; *Bank of Middleton* v. *Edgerton,* 30 Vt. 190; and *Hall* v. *Sullivan R. Co.,* 21 Law Rep. 138, 141; also cited by Pierce, p. 522; but that the statute permitted it, and cited subdivision second of section seventeen of the act to provide for the incorporation of railroad companies "To receive, hold, take, and convey, by deed or otherwise, the same as a natural person might, or could do, such voluntary grants and donations of real estate, and other property of every description, as shall be made to it, to aid and encourage the construction, maintenance, and accommodation of such railroad."

*Hall McAllister, H. A. Manchester, and J. A. Loutitt,* for the Respondents.

The duty of the council is personal, and solely judicial; a duty placed by the law and by the acts of the parties solely within the judgment and consciences of its members,

and their judgment is made by the act of the Legislature an absolute, indispensable condition to the issuance of the bonds. (*McCarthy* v. *Brooks*, 16 Cal. 57; 3 Railway Cases, 298, and 27 Eng. L. & Eq. 35; *People* v. *Canal Board*, 13 Barb. 432, 442; *Brown* v. *Overbury*, 34 Eng. L. & Eq. 610; *Snodgrass* v. *Gavitt*, 28 Penn. St. 221.)

The petitioner was bound to comply with the act before he could claim the benefit of its provisions. (2 Redf. on Railways, 259, note.)

A corporation cannot be formed under the statute for the purchase of a railroad already built.

The charters of said companies contain no such authority. Corporations are bound strictly to follow the letter of their charters. They can exercise no power unless granted to them, or absolutely necessary to carry out the power so granted. (*Smith* v. *Moore*, 2 Cal. 524; *People* v. *The Troy House Co.*, 44 Barb. 625; *Wood et al.* v. *Truckee Turnp. Co.*, 24 Cal. 474.) Cannot be sold at forced sale. (*Monro* v. *Thomas*, 5 Cal. 470; Redf. on Railways, 419, 422.) Cannot be sold by voluntary assignment, unless by consent of government.

The deed attempts to separate the road from the franchise, which cannot be done. (2 Redf. on Railways, 412; Note case 2 Gray 1, and 474 Cal. cited above; *Tucker* v. *Tower*, 9 Pick. 108; 3 Kent's Com. 532, 8th ed.; *Commonwealth* v. *Wilkinson*, 16 Pick. 176; *N. Y. & Erie Railway* v. *Carey*, 26 Penn. 237.

The purchased road, even if the deed was good, is such a variation from the line laid down in the act of incorporation of the petitioner, and, also, that of the act of April 1, 1870, as would defeat all claim for the bonds. (1 Redf. on Railways, Sec. 165, pp. 290-1; *Little Miami Railway Co.* v. *Naylor*, 2 Ohio St. 285.)

*McAllisters & Bergin*, also for the Respondents.

In the case at bar the road called for by the statute never was built. No map of the location of its route was ever filed. The substituted road is not an equivalent. It is not in the same direction, and does not secure the benefits in-

tended to result therefrom. The road to Peters was laid out as part of the Stockton and Copperopolis road.

"It is a well-settled rule of law, that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him." (*Baker* v. *Johnson*, 42 N. Y. 131; *Oakley* v. *Morton*, 1 Kern. 34.) "The performance must be exact. (*Oakley* v. *Morton*, 1 Kern. 34.)

*H. H. Haight*, also for the Respondents.

By the Court, NILES, J.:

This is an application for a mandamus to compel the delivery to the petitioner of certain bonds of the city of Stockton, issued under the act of April 1, 1870 (Stats. 1869–70, p. 551), and placed in the hands of the trustees named in the tenth section of the act. The petitioner claims to have performed the conditions upon which it was to become entitled to the bonds under the terms of the act. This is denied by the respondents, who resist the application on the ground, first, that the portion of the road lying between the city of Stockton and Peters, 14½ miles in length, was not constructed by the petitioner, but by another railroad company, by which it was sold and conveyed to the petitioner. Second, that the road as located and built does not pursue the route prescribed by the act. There are several minor objections, which, however, may be considered under these two general heads.

First. It is clear from the whole act, that the purpose of the subsidy was to aid the railroad company in establishing railroad communication from the water front in Stockton, "through the county of San Joaquin and up the San Joaquin Valley, in the direction of the town of Visalia, county of Tulare." (Stats. 1869–70, p. 551.) At the passage of the act, no work had been done towards the construction of such a road, and the object of the people of Stockton in voting the subsidy, was to secure railroad communication

from their water front, through their county, up the Valley, in the direction of Visalia. It appears, however, from the findings, that the Stockton and Copperopolis Company was incorporated to construct a railroad from the water front in Stockton to the town of Copperopolis in Calaveras County, and that some work was done towards the grading of its road-bed, from Stockton to Peters, as early as the year 1866, when the work was discontinued, and was not resumed until November, 1870. In the meantime, to wit, in April, 1870, a vote was had in pursuance of the statute, which resulted in favor of the subsidy to the Stockton and Visalia Railroad Company. It appears, therefore, that when the subsidy was voted, work on the Stockton and Copperopolis road had been discontinued for four years or more; but in November, 1870, the work was resumed, and the road was completed to Peters in February, 1871. This portion of that road was subsequently purchased by the Stockton and Visalia Railroad Company, and was adopted as a portion of its line in the direction of Visalia, and was continued by the last-named company through the county of San Joaquin, in the direction of Visalia, as the petitioners contend. Assuming, as we have stated, that this road was so located as to bring it in that respect within the provision of the statute, the question is, whether to entitle it to the subsidy, it was incumbent on the Stockton and Visalia Company to construct a new road over its entire route, or whether it could purchase a section of another road constructed by another company after the subsidy was voted, and adopt it as a part of its line. On the theory of the respondents, nothing short of the construction *by the company* of a *new* road over the entire route from the water front to the county line, would entitle it to the subsidy. If pushed to its logical conclusion, the result of the argument would be, that if another company, after the subsidy was voted, had constructed a few miles of railroad, or even a single mile, on the most practicable and advantageous route of the proposed road, the Stockton and Visalia Company would not be allowed to acquire it and incorporate it into its road, but must necessarily construct an entirely new road, running, it may be,

in the immediate vicinity of the other and parallel with it. There can be no possible doubt of the right of the company to purchase the material—the iron, ties, and rolling-stock—of the Copperopolis Company from Stockton to Peters, and to use them in the construction and equipment of the proposed new road. No one will question this right. If it had done so, had torn up the track and used the same material in building another road fifty feet distant, there could be no pretense for saying that this was a violation of either the letter or spirit of the statute granting the subsidy. But why impose this useless labor and expense if the road as it then was, was in the proper location, and was in all respects suitable for the purpose intended? Why require the track to be torn up only to be again replaced? This would have been a superfluous work, not required by either the letter or spirit of the act, and by the purchase of this portion of the road, and incorporating it into the new road, the company has secured to the people of Stockton precisely the same benefits as though they had torn up the track and reconstructed it with the same or other materials. These benefits were to consist of permanent communication by a first-class railroad from the water front, up the Valley to the county line, in the direction of Visalia. The twelfth section of the statute defines the duties and obligations of the railroad company, which are, first, that the western terminus of the road shall never be removed from the water front without the consent of the Common Council; second, that fifteen miles of the road, commencing at the water front, shall be built and equipped within eighteen months, in a manner acceptable to the Common Council, and equipped with the requisite number of the most improved cars and engines; third that the city of Stockton shall have a first lien on the first fifteen miles of the road and its equipment; and if the company shall fail to complete the whole road to the county line and to equip it as a first-class railroad within thirty months next after the passage of the act, all the right and title of the company to the first fifteen miles of the road and its appurtenances, shall vest in the city of Stockton; fourth, that the rates for freights and passengers over the

road shall not exceed ten cents per ton per mile for freight, and seven cents per mile for each passenger. None of the benefits which were expected to accrue to the city and the people of Stockton, from the construction of the proposed road, nor any of the rights secured to them by the twelfth section of the act, were in any degree lessened or impaired by the fact that instead of constructing a new road for the entire distance, the company purchased and incorporated into its road a small section of another road built by others. When purchased, and the whole road was completed, this section, like all the rest, became subject to all the conditions imposed by the statute. It must have been a first-class road and equipped in the best manner. The western terminus must remain at the water front, and the rates for freight and passage cannot exceed those fixed by the statute. We are therefore of opinion that the company did not forfeit its right to the subsidy, merely by the fact that it purchased instead of building this section of the road.

Second. It is contended that the road does not pursue the route prescribed by the statute, and that for this reason the company is not entitled to the subsidy.

It appears from the findings that the Stockton and Visalia Railroad Company was incorporated, as declared by its articles of association, for the purpose of constructing a railroad "from the navigable waters in the city of Stockton, in the county of San Joaquin, through said county and the counties of Stanislaus, Merced, Fresno and Tulare, to a point at or near the town of Visalia, in said county of Tulare." It further appears that Visalia is distant from Stockton one hundred and sixty miles, in a southeast direction, and that the course of the San Joaquin Valley is from southeast to northwest, while the direction of the town of Peters from Stockton is two points north of east. It also appears that the point at which the railroad crosses the county line between the counties of San Joaquin and Stanislaus is several miles north of an air-line drawn from Stockton to Visalia. As before observed, the only route for the proposed road indicated by the statute, is from the water front in Stockton, "through the county of San Joa-

quin, in the *direction* of the town of Visalia." In respect
to the route, the only requirement is that it shall be through
the county, up the Valley and in the direction of Visalia.
All else is left to the discretion of the railroad company. It
is not denied that the road runs through the county now,
as we understand counsel, that it is located wholly in the
Valley. But it is urged that it does not run up the Valley
in the direction of Visalia, in the sense of the statute. It
does not pursue an air-line toward Visalia, it is true, nor
does the statute require it; but its general course is up the
Valley, in the "direction" of Visalia, which is all that is
necessary upon any fair interpretation of the statute. In
defining the general course of the route, it was not the pur-
pose of the Legislature to prescribe a particular line or any
definite point for the eastern terminus. All that was left to
the discretion of the company and its engineers, provided
only the road was constructed through the county, up the
Valley, and in the *direction* of Visalia. We think all these
requirements were fulfilled.

There is nothing in the case of the *Virginia & Truckee R.
R. Co.* v. *Commissioners of Lyons Co.* (6 Nev. R. 71), cited
by counsel, repugnant to these views. In that case the stat-
ute emphatically required the road to pass a point not more
than twelve hundred feet west of a certain mill. As con-
structed the road did not pass within twenty-four hundred
feet of the mill; and the court very properly held that the
condition had not been complied with. But no such ques-
tion arises here. There the line of the road was definitely
limited by the statute to a point not to exceed twelve hun-
dred feet from the mill; while here only the general direc-
tion of the route is prescribed.

Another point urged by the respondents is, that under
section 13 of the statute the trustees cannot deliver the
bonds until they shall first have received from the Common
Council a written statement to the effect that the "road has
been constructed and the track laid in a manner and of a
character acceptable to them, and that the same is properly
stocked." The Common Council refuses to make this state-
ment, and the argument is that they are to exercise their

judgment on the point whether the road has been properly constructed and stocked; that they must be satisfied on this point before the written statement can be demanded, and it is said the road is not acceptable to them, and therefore they properly refuse to make the written statement, and cannot be compelled by mandamus to perform an act in respect to which they are entitled to exercise their judgment and discretion. On this theory the Common Council might forever defeat the delivery of the bonds, by declining to be satisfied, even though it appeared by the most convincing proofs that the road in every minute particular had been constructed and stocked in the manner and within the time prescribed by the statute. We had a similar question before us in the case of the *People* v. *Supervisors of Alameda* (45 Cal. 395). In that case, a petition, signed by the requisite number of qualified electors, had been presented to the Board of Supervisors, requesting that an election be called on the question of removing the county seat. The Board refused to order an election, and an alternative writ of mandate was issued out of this Court. The proceedings for the removal of the county seat were had under section 3976 *et seq.* of the Political Code; and in its answer to the suit the Board set up as one of its defenses that, under the statute, it was its duty to determine whether the petition was signed by the requisite number of qualified electors, and it was not satisfied from the proofs offered in support of the petition that it was so signed; and for that, among other reasons, had declined to order an election. We struck out this portion of the answer, as constituting no defense, and ordered an issue to be tried whether, in point of fact, the petition was signed by the requisite number of qualified electors. Our view of the law then was, and yet is, that if an official duty is to be performed on the happening of an event, the officer cannot arbitrarily or capriciously refuse to perform it, after the event has happened, on the plea that he is not satisfied that it has happened. If the fact exists, and is established by sufficient proofs, it is his legal duty to be satisfied, and to act accordingly. We deem it unnecessary to consider the other point discussed by counsel.

Judgment and order reversed, and cause remanded, with an order to the court below to issue a peremptory writ of mandate, as prayed for.

Mr. Justice RHODES dissented.

McKINSTRY, J., dissenting:

I dissent.   In my opinion plaintiff's road did not run from the water front of Stockton "through the county of San Joaquin and up the San Joaquin Valley in direction of the town of Visalia."

A rehearing having been granted, the following opinion was delivered:

By the Court, NILES, J.:

The reargument of this cause has not changed the views expressed by us in the opinion heretofore rendered, and it will stand as the opinion of the court.

Judgment and order reversed, and cause remanded, with an order to the court below to issue a peremptory writ of mandate as prayed for.

Remittitur forthwith.

RHODES, J., dissenting:

1. The bonds of the city were, by the act, required to be delivered to the plaintiff, to aid " in constructing a railroad from the water front in said city through the county of San Joaquin, and up the San Joaquin Valley, in the direction of the town of Visalia, county of Tulare."   A road leading from Stockton to Peters, a distance of fourteen and a half miles, in a direction north of east, is not a road leading from Stockton up the San Joaquin Valley in the direction of the town of Visalia, which would run in a southeast direction—there being no obstacles to the construction of a road in that direction.

2. In view of the facts existing at the time of the passage of the act of April 1, 1870, I am satisfied that the Legislature did not contemplate the *purchase* of a railroad by the plaintiff as a compliance on its part with the provisions of the act.

3. I am not satisfied that the plaintiff, by virtue of the laws under which it was organized, and the laws defining the powers of such corporations, had the power to make the purchase of the Stockton and Copperopolis Railroad Company, as shown in this case; but, on the contrary, I am of the opinion that the plaintiff did not have the power to make the purchase, and that the Stockton and Copperopolis Railroad Company did not have the power to make the sale.

4. I am satisfied that the right of way acquired by the Stockton and Copperopolis Railroad Company, whether acquired by purchase, by proceedings for condemnation, or by municipal grant, did not become the right of way for the Stockton and Visalia Railroad by an attempted conveyance made by the former to the latter company.

5. But if those corporations did respectively possess such powers, I am of the opinion that the Legislature has not competent authority to provide for the granting of a subsidy by the city of Stockton, to aid one corporation in purchasing from another a railroad already constructed.

In my opinion the judgment and order should be affirmed.

MCKINSTRY, J., dissenting:

I dissent from the opinion of the majority of the court (and from the judgment) on the first and second of the grounds mentioned in the opinion of Mr. Justice RHODES.