Filed April 7, 1885.

----

No. 12,020.

## THE INDIANAPOLIS, DELPHI AND CHICAGO RAILROAD COMPANY *v.* HOLMES.

RAILROADS.—*Contract.* — *Condition Precedent.*—To assist the plaintiff, a railroad company, in building its road as proposed, H. agreed in writing to pay it $200 upon the arrival at Delphi from Indianapolis of the first train of cars over the track of railroad proposed to be built by the plaintiff from Indianapolis to Chicago. The road was built from Delphi to within one and a half miles of Indianapolis, but by a different route, and thence to a depot in the latter place the track of another road was used, and by this line a train of cars came from Indianapolis to Delphi.

*Held,* that the condition precedent was not performed, and there could be no recovery.

From the Carroll Circuit Court.

*J. C. Odell* and *T. H. Palmer,* for appellant.

*J. A. Sims* and *C. E. Taber,* for appellee.

MITCHELL, J.—There was a special finding of facts by the court in this case, and as the only error assigned which involves the merits of the controversy is, that the court erred

in its conclusions of law upon the facts found, the case may be disposed of by a consideration of the facts deemed to be material as found by the court, and a determination of the law upon such facts.

The suit was upon a written instrument, signed by William W. Holmes, bearing date November 3d, 1871, the purport of which was that on the arrival of the first train of cars at Delphi, Indiana, from Indianapolis, over the track of railroad proposed to be built from Indianapolis, Indiana, to Chicago, Illinois, and to aid in such building, and in consideration thereof, Holmes promised to pay the railroad company, above named, $200, with ten per cent. interest if not paid at maturity.

The court found that the railroad company was organized pursuant to the laws of this State, in May, 1869, and received from the defendant at its date, the obligation above mentioned; that after procuring the right of way and constructing its road from Delphi to Rensselaer, a distance of about thirty miles, and expending about $75,000 in addition in procuring right of way between Rensselaer and Dyer, the railroad company executed a trust deed to one Morris Sharp to secure a contemplated issue of $900,000 of its bonds. This deed and a supplemental deed or mortgage executed to the same person for the same purpose as the first, embraced all the property, real and personal, of the company, including its franchises, excepting only two subsidies mentioned in the last deed, one voted by Union township, in White county, and one by Deer Creek township, in Carroll county. On the 18th day of December, 1880, pursuant to a decree of foreclosure had under the deeds above mentioned, all the property embraced therein was sold by a special master to a trustee of the Chicago and Indianapolis Air-Line Railway Company, which sale was duly approved by the court, and the property transferred to the last named company. This company then took possession of the property and completed the road from Dyer to Rensselaer, connecting there with that

built by the plaintiff company from Delphi to Rensselaer. Subsequently it completed the road from Delphi to Howland station, in Marion county, which is a station on the Wabash, St. Louis and Pacific Railroad, about one and a half miles from the corporate limits of the city of Indianapolis, and by an arrangement with the Wabash road, under which its track was used from thence to the Union Depot, a distance of four and a half miles, the Air-Line company ran a train of cars from Indianapolis to Delphi on the 26th day of March, 1883, and continued to run them regularly from that time forward, using the track of the Wabash road from Howland station to the Union Depot.

It is found that the Indianapolis, Delphi and Chicago Railroad Company had made a survey of a line, before its property and franchises were sold, from Delphi to Indianapolis, the expense of which was paid by donations, but the Air-Line Company, which acquired its property, rights and franchises, adopted another independent route which it surveyed for itself, nothing more having been done by the first company between these points than to survey a line. It was also found that the instrument sued on never was in the actual possession of the Air-Line Company, but at all times remained in the hands of the plaintiff or its agents.

Upon the foregoing facts the court stated its conclusions of law to the effect that the plaintiff was not entitled to recover, to which, without any motion for a new trial, exceptions were taken by the appellant.

The consideration upon which the contract sued on was made, was the implied promise of the Indianapolis, Delphi and Chicago Railroad Company to construct a railway from Delphi to Indianapolis, upon a route then projected. To aid in that enterprise the appellee bound himself to pay the sum of $200, upon the arrival of the first train of cars at Delphi from Indianapolis, over the track of the railroad proposed to be built from Indianapolis, Indiana, to Chicago, Illinois.

To entitle the plaintiff to recover, it must have been found

by the court that the conditions upon which the money, according to the contract, became payable, had been performed, that is, that a railroad had been built, or caused to be built by the plaintiff substantially on the projected route, and that a train of cars had arrived at Delphi over it from Indianapolis.

While the contract does not, in terms define any particular line over which the road was to be built between the termini named, it is nevertheless clearly implied that a particular route had been projected or proposed, and the appellee was to pay his money when the road was built from the one terminal point on the line proposed to the other, and the first train of cars had arrived at Delphi from Indianapolis over that line, and no other. He had a right to contract that way, and as a condition precedent to the plaintiff's right to recover the money from him, it must show a substantial compliance on its part. This it has failed to do. It is not found that the road was built, or that a train of cars arrived at Delphi, over the line proposed. On the contrary, it is expressly found by the court that after the sale to the Air-Line Company, a new and independent route was surveyed, and that the road was located and built on that line. To what extent this new line varied from that originally proposed does not appear in the findings of the court. It may have been inconsiderable, or it may have been widely different, but as it was necessary for the plaintiff to show a substantial compliance, its failure to show that it was built on the line proposed, or substantially so, was fatal to its right of recovery.

Moreover, the arrival of the train of cars which was to designate the time of payment, was a train over the track proposed from Indianapolis. By no intendment can this be taken to mean a train which should pass over the track of the Wabash, St. Louis and Pacific Railway Company from Indianapolis to Howland station, four and a half miles from the depot in Indianapolis, thence to Delphi over its own track. It may well be supposed that it was an inducement in the appellee's mind to extend aid to the plaintiff company in order

to secure an independent competitor of the very company to which it, or its successor, became in a measure subservient. To build the road to a point within a mile and a half of the city limits, and without any terminal facilities of its own, to proceed thence, under some arrangement, temporary so far as appears, over the track of another company to the depot, is not a substantial compliance with the contract, even if the road had been built in other respects as proposed. This was ruled in *People, ex rel.,* v. *Town of Clayton,* 88 Ill. 45. See, also, *Freeman* v. *Matlock,* 67 Ind. 99.

It was held in *Stockton, etc., R. R. Co.* v. *City of Stockton,* 51 Cal. 328, that where a railroad company would become entitled to a subsidy on condition that it should construct a railroad on a certain proposed route, the purchase and adoption of another piece of road which was already built on part of the proposed route did not forfeit its right to the subsidy. But that is widely different from merely making a temporary arrangement under which the track of another company is used in conjunction with it.

Whatever else may have been uncertain as to the projected route, two points were definitely fixed, and the money was only to be paid when the first train of cars arrived at Delphi from Indianapolis over the track proposed. As it is not found that these conditions have been complied with, no recovery can be had. *Shearer* v. *Evansville, etc., R. R. Co.,* 12 Ind. 452; *Parker* v. *Thomas,* 19 Ind. 213; *Taylor* v. *Fletcher,* 15 Ind. 80. As the plaintiff can not recover for the reasons already indicated, little need be said concerning the other points raised.

It may be remarked, however, that from the facts found it would seem that whatever right the plaintiff had in the contract sued on was transferred, under the sale, to the Air-Line Company, and whether it was transferred or not we should doubt the right of the plaintiff to recover on it, by showing that some other company had built a road, even if built in substantial compliance with the contract, unless it was made

to appear that the plaintiff company had in some substantial way caused or promoted the building of it.

The judgment is affirmed, with costs.

Filed April 11, 1885.