# Garner *v.* Hall & Farley.

122　221
121　546
122　221
132　638

*Action on Note for Subscription to Capital Stock.*

1. *Note for subscription to capital stock; when demand of president not binding; estoppel.*—Where a note given for the subscription of stock in a railroad corporation contains the stipulation that it shall not mature until the board of directors of said company shall decide that the railroad has been fin-

[Garner v. Hall & Farley.]

ished, and that if said company shall fail to complete the road by a certain designated time the note shall be void, a written demand of the president for the payment of said note, reciting that it was due and that the road was finished, being the mere declaration of an agent, is not, in the absence of proof of authority in the president to make it, binding upon the company, and does not estop the company from denying the completion of the road at the time such demand was made.

2. *Same; effect of resolution of directors; estoppel* —Where a note given for subscription for stock in a railroad corporation contains the stipulation that the amount thereof should be payable whenever the board of directors of said company shall decide that the railroad has been completed, and that if said company shall fail to complete the road by a certain designated time the note shall be void, and it is further provided that notice as published in certain newspapers of the completion of the road should be notice to the maker of the note of its maturity, such road is not estopped by a resolution of the board of directors that the road had been completed, and published notice of the decision of such completion, from showing that at the time of the passage of such resolution and of the publication of the notice, the road was not completed in accordance with the contract; it affirmatively appearing that the maker of the note refused to act upon the representations contained in the resolution and published notices.

3. *Same; construction of bridge along its line necessary to completion of it.*—Where in the projection of a railroad, it is contemplated that a bridge should be built across a river along the projected line and the contract for the construction of the road embraces and includes the construction of such bridge, the bridge constitutes a part of said road; and a note given for the subscription to stock to said railroad company which contains the stipulation that it is payable when the road is completed, does not mature until such bridge is built across said river; the construction of the bridge across said river being necessary, by the terms of the contract, to the completion of the road.

APPEAL from the Circuit Court of Dale.

Tried before the Hon. J. M. CARMICHAEL.

This action was instituted on December 24, 1895, by the appellees, J. L. Hall and L. B. Farley, trustees, against the appellant, B. P. Garner; and counted upon a note, which was in words and figures as follows: $100.00. Ozark, Ala., April 2, 1897. I promise to pay to

.[Garner v. Hall & Farley.]

the Alabama Midland Railway Company as now char-
tered under the general railroad laws of this State, or
any amendment that may hereafter be made either by
general law or by act of Legislature, its order or assigns,
one hundred dollars at the Banking House of Farmers &
Merchants Bank, Troy, Ala., to be paid in cash on de-
mand at maturity of this note; this amount being the
total amount of my subscription to the capital stock of
the Alabama Midland Railway Company. It is agreed
that said amount, to-wit, one hundred dollars, mature
and become due and payable whenever the Board of Di-
rectors of said Railway Company shall decide that the
railroad has been finished to a point within one-half mile
from the center of the city of Ozark, from one or the
other of its terminal points, and that said road is of
standard gauge, laid with steel rail; publication of said
decision of said Board of Directors to be made in one of
the daily papers of the city of Montgomery, Ala., shall
be final 'and conclusive notice to me of the same. It is
hereby agreed and made part of the condition of the con-
tract that if the said Alabama Midland Railway Com-
pany should fail to complete the work necessary to make
this obligation binding by the 1st day of October, 1890,
then this instrument is null and void. I hereby waive all
and every right which I may now or hereafter have
under the constitution and laws of Alabama, to have any
personal property exempt from levy and sale under legal
process and choses in action from garnishment.
(Signed) B. P. Garner."

After setting out this note in the complaint, the plain-
tiff averred that the railroad of the Alabama Midland
Railway Co. was finished within one-half mile of the cen-
ter of the city of Ozark, Alabama, from one or the other
of its terminal points, towit, Bainbridge, Ga., and Mont-
gomery, Alabama, prior to October 1st, 1890, on, to-wit,
May 1st, 1890, and that said road was, in every way,
built and constructed as required under the stipulations
of the instrument sued upon.

The defendant filed two pleas, in which he set up as a
defense the statute of limitations of six years, averring
that the railroad was completed as stipulated for in the
note sued upon and that the Board of Directors declared

and decided that it has been finished as provided for in said contract, and that in compliance with said contract in the note sued on, the board of directors published in a daily paper published in the city of Montgomery, that said road had been finished from Ozark, Alabama, to one of its terminal points, and that it was completed as provided for in said contract, on September 27th, 1889, more than six years previous to the commencement of this suit.

After demurrers were overruled to these pleas, the cause was tried upon issues joined thereon.

The plaintiff introduced in evidence the note sued on, and also introduced evidence tending to show that said railroad was completed within one-half mile of the city of Ozark, Alabama, laid with steel rails of standard guage from Montgomery, Alabama, to Bainbridge, Georgia, including the construction of the bridge over the Chattahoochee River in May, 1890. The undisputed facts, as disclosed on the trial, are stated in the opinion.·

The defendant as a witness in his own behalf, testified that trains were running on regular schedule time on said road in August, 1889, and that the road was regarded as completed on Sept. 27, 1889. The defendant further testified that on Oct. 1, 1889, he received a note from the Bank of Troy, Alabama, addressed to him, in which he was notified that the note here sued on was, at that time, due and payable, and he was asked to call at the Farmers and Merchants Bank of Troy and pay the same. This note was signed by "O. C. Wiley, President," and "J. W. Woolfolk, President." And that at the same time he received a notice from the cashier of the Farmers and Merchants Bank of Troy, Alabama, notifying him that his note (the one here sued on) was due and payable.

The defendant introduced in evidence the following notice, which was printed in the Montgomery Daily Advertiser, a newspaper published in the city of Montgomery, Alabama, in the year 1889, and it appeared in said paper for ten days, from September 27 to October 7, 1889, inclusive:

"Notice to subscribers. The State of Alabama, Montgomery County. Notice is hereby given that the Ala-

[Garner v. Hall & Farley.]

bama Midland Railway has been constructed and completed into and through the counties of Henry and Dale in Alabama, passing through and into Garland, Ashford, Dothan, Midland City, Newton and Ozark; that said road is laid with sixty pound steel rail, and thoroughly equipped and built in a thoroughly first class manner, as prescribed in the contract, and subscriptions to the stock of said railway company at the several points named are now declared by the board of directors to be due and payable according to the terms of subscription. O. C. Wiley, President." The defendant also offered in evidence the following notice published in Ozark, Alabama, for three weeks, commencing October 1st, 1889: "Notice to subscribers: Notice is hereby given that the Alabama Midland Railway having been finished to a point within a half mile of the town of Ozark, and that said road having been built in a substantial and first class manner and in conformity with the notice published in the Montgomery Advertiser, the subscriptions to the capital stock of said company are declared by the board of directors to be due and payable, and notes of subscribers can be found with Farmers & Merchants Bank at Troy, Alabama, where the subscribers will call, or send, and pay them. Mr. G. Peterson is the authorized agent to receive and remit the amount and issue the stock. Mr. J. F. McDoanld is appointed special agent in collections. J. W. Woolfolk, President, and O. C. Wiley, V. President." The defendant then further testified as a witness that one J. F. McDonald, as the agent of said Alabama Midland Railway Company came to him between September 17 and October 10, 1889, with the note here sued on and demanded payment thereof, and said McDonald had with him and showed defendant a copy of the notice published in the Montgomery Advertiser and in Ozark as above set forth.

O. C. Wiley, as a witness for the defendant, testified that in the year 1889, he was the president of the Alabama Midland Railway Company; that on September 27, 1889, he, as said president, called a meeting of the directors of said railway, at which meeting a majority of the directors, in compliance with the laws of said railway company, voted for the passage of a resolution declaring that the subscription notes payable to said railway, in-

cluding the note sued on, were due and collectable; that said resolution was in substance the same as said notice published in the Montgomery Advertiser on September 27, 1889; that the notice published in Ozark and sent out by the Bank of Troy and the demand by McDonald were issued and directed by authority of said directors; that while there was a regular schedule for the running of freight and passenger trains between Ozark, Alabama, and Bainbridge, Ga., in September, 1889, there was no bridge over the Chattahoochee river until May, 1890, and that such bridge constituted a part of the company's line of railroad between Ozark, Ala., and Bainbridge, Ga. The other facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court at the request of the plaintiff gave to the jury the following written charge : "The court charges the jury that if they believe the evidence, they should find for the plaintiff for the amount sued for." To the giving of this charge the defendant duly excepted.

There were verdict and judgment for the plaintiff. The defendant appeals, and assigns as error the giving of the general affirmative charge in favor of the plaintiff.

BLACKMAN & WILKINSON, for appellant.—It was for the jury to decide from the facts if they were reasonably satisfied as to truth of either of said pleas.—*Cox v. Knight,* 49 Ala. 173; *Seals v. Edmondson,* 73 Ala. 295; *Cen. R. R. & B. Co. v. Cheatham,* 85 Ala. 271.

Appellees are estopped from denying this note was due. They, by resolution of directors so declared and published; and upon said declaration collected thousands of dollars.—*Caldwell v. Smith,* 77 Ala. 165.

As to fact of bridge being part of road, see *Cass County v. C., B. & Q. R. R. Co.,* 25 Neb. 348.

R. L. HARMON, *contra.*—The plea of the statute of limitations, upon which issue was joined, was not sustained by the proof; and the general affirmative charge was properly given at the request of the plaintiffs.

[Garner v. Hall & Farley.]

The road was not finished according to the terms of the contract, until January 22nd, 1890. The bridge across the Chattahoochee River, was as much a part of the road required by the terms of the note to be finished by the 1st of October, 1890, as any other part of the road. The evidence shows that the construction of this bridge was provided for in the charter authorizing the road, and contemplated by the incorporators of the road. Can it be doubted that if the bridge across the Chattahoochee River had not been constructed so that trains could pass over it by the 1st of October, 1890, and the road had not been finished from Ozark to Montgomery by that time, that the defendant and all other subscribers who had given like notes, would have insisted—and correctly so—that the building of this bridge was a necessary part of the work to be done, in order to constitute a compliance with the conditions set forth in the note?—*People v. The Town of Clayton*, 88 Ill. 45; *M. K. & C. R'y Co. v. Thompson*, 24 Kans. 170; *Taylor v. Fletcher*, 15 Ind. 80; *I., D. & C. R. R. Co. v. Holmes*, 101 Ind. 348; *Freeman v. Matlock*, 67 Ind. 99.

The plaintiffs were not estopped from denying that the conditions in the note had not been fully complied with. Bigelow on Estoppel (5th ed.) 570; *Sullivan v. Conway*, 81 Ala. 154.

TYSON, J.—The complaint in this case, after setting out the contract *in haec verba*, avers "that the road was finished to a point within ½ mile from the center of the city of Ozark from one or the other of its terminal points, to-wit: Bainbridge, Ga., and Montgomery, Ala., prior to the 1st day of October, 1890, on to-wit, the first day of May, 1890; and that said road was of standard guage and laid with steel rails and the note matured October 1, 1890." The only defense interposed at the trial from which this appeal is prosecuted, was the statute of limitations of six years. In the pleas it was averred that the road was completed according to the contract sued on prior to and on the 27th day of September, 1889; this being more than six years before the commencement of this suit. When this case was here on a former appeal this court said: "It is evident the parties understood that

the road might be completed at an earlier date than the first of October, 1890, and that it was their design to mature the note earlier than that date, if, and when the road should be earlier completed. The question then is, were the conditions and terms necessary to mature the note, complied with and performed more than six years before the bringing of the suit? These were that the railroad should be finished acording to the contract, a decision by the board of directors to that effect and notice to the obligor. Certainly upon proof of these facts at any time after the execution of the contract, the obligor could not have defeated a recovery upon the ground that the note did not mature until October 1st, 1890; and if the obligation matured as to defendant prior to October 1st, 1890, it must have matured also as to the plaintiffs. * * *

"The finishing of the road was indispensable to fix a liability upon the defendant. * * The real intention of the parties was to fasten a matured liability whenever and as soon as the road was finished according to contract, provided it was finished not later than October 1st, 1890."—*Garner v. Hall & Farley*, 114 Ala. 166.

In *Hall v. Sims*, 106 Ala. 561, Justice HARALSON, in construing a contract containing substantially the same conditions and terms as the one under consideration, said: "It was the reasonable *bona fide* completion of the work, according to the terms of subscription and not the declaration of the directors, that bound the defendant to pay his note. If they made a false declaration, defendant would not have been bound thereby to pay. * * * It was the truth of the fact declared, and not the mere declaration of it, that was important and controlling." The court held in that case that notwithstanding the directors had made a declaration that was insufficient to mature the note, it might be shown by the holder of the contract by parol that the road had been completed according to its terms, thereby maturing it on the 1st day of October, 1890.

The declaration made by the directors on the 27th day of September, 1889, and the notices published in the Montgomery Advertiser and the Ozark Star were insufficient to mature the note.—*Hall v. Sims, supra*. The

[Garner v. Hall & Farley.]

written demand of date October 1st, 1889, upon the defendant for the payment of the note signed by Woolfolk, president, and Wiley, president, reciting that it was due and the road had been completed according to the terms of the contract were mere declarations by an agent, and in the absence of all evidence touching the scope of their authority by the railway company to make them, they could not affect the rights of plaintiffs.—*Brush Electric Light & Power Co. v. City Council of Montgomery*, 114 Ala. 433, and authorities there. cited. The contention that plaintiffs were estopped by the resolution of the directors and the published notices is without merit; it affirmatively appearing that defendant refused to act upon the representations contained in them.—*Sullivan v. Conway*, 81 Ala. 154; *Caldwell v. Smith*, 77 Ala. 159; Bigelow on Estoppel, p. 638.

The undisputed facts are that the road was finished from within one-half of a mile of the center of Ozark, of standard gauge and laid with steel rails to the Chattahoochee river on September 27th, 1889; that trains both freight and passenger were being operated over it between these points. That at the Chattahoochee river the company used boats to transfer freight and passengers across the river from September 27, 1889, to about May, 1890, where they were transported from that point over the road to Bainbridge, Ga., but this was only a temporary arrangement until the bridge could be built. That when the railway company was incorporated for the construction of the road, it contemplated the building of a bridge across the river, and to this end procured an act of Congress to be passed allowing it. The contract for the contruction of the road embraced and included the construction of this bridge and it was constructed and completed under this contract about Feb. 1, 1890. That this bridge constitutes a part of the road between Ozark and Bainbridge. The road from the other terminal point, Montgomery, was completed in May, 1890.

The only remaining question presented for decision is whether the construction of the bridge across the Chattahoochee river was necessary by the terms of the contract to the completion of the road between Ozark and Bainbridge. It will be observed that by the terms of the con-

tract the railway company was to *finish its* road to a point within one-half mile of the center of the city of Ozark from one or the other of its terminal points by the 1st day of October, 1890, in a certain manner, and its failure to do so rendered the contract void. Had this company undertaken to enforce the collection of this note before building the bridge, it would have been a perfect answer that the road had not been *finished.* The bridge was necessary to a successful operation of the trains over the road as a continuous line.

In the case of *Freeman v. Matlock,* 67 Ind. 99, the suit was on a promissory note given for the common capital stock in a certain railroad containing the stipulation, "that the maker, for the purpose of aiding in the construction of said railroad and in consideration thereof, promised to pay, upon the arrival of the first train of cars on said road at a certain place, to the order of the railroad company, a certain sum of money; and that if said road was not *completed* by a certain day and the cars running to said place, said note should be null and void. The evidence showed that the cars which ran to the place and on the day mentioned in the note, were not run over the located and established line of the road, but over a temporary track laid down for the purpose, and that it was four months after that day before the cars were running to said place on said road." The court held, that it was not necessary that the road should be perfect and finished in every particular and its tracks well ballasted; but it should have been so far completed on its located and established line, that the cars might have been and were run as stipulated in the note and with reasonable regularity thereafter and that the road was not completed, within the meaning of the note and that it was therefore void. See also the following cases which support these views: *The Indianapolis, Delphi and Chicago Railroad Co. v. Holmes,* 101 Ind. 348; *The M. K. & C. R'y Co. v. Thompson,* 24 Kan. 170; *The People ex rel. C. P. & S. W. R. R. Co. v. The Town of Clayton,* 88 Ill. 45. The case of *Cass County v. The C. B. & Q. R. R. Co.,* 25 Neb. 348, is not, in our opinion, in conflict with the principles announced in these cases, and if it can be so construed, we would decline to follow it.

[Southern Railway v. Guyton.]

Had, before the construction of the bridge, the cars and engines of the railroad company been transferred across the river by means of boats or other temporary instrumentalities, this would not affect our conclusion.

We hold, therefore, that the note never matured until October 1st, 1890, as the bridge was not completed in such manner as to allow trains to pass over it with reasonable safety until between the 22nd day of January and the 1st day of February, 1890. The affirmative charge was properly given for the plaintiffs.

Judgment affirmed.