BRAMSON (WHITAKER v.). See Case No. 17,526.

## Case No. 1,807.

BRANCH et al. v. ATLANTIC & G. R. CO. et al.

[3 Woods, 481.][1]

Circuit Court, S. D. Georgia. April Term, 1879.

RAILROAD COMPANIES—CHARTER—POWERS UNDER —CONSOLIDATION — MORTGAGE ON ROAD—MORTGAGEE—LIEN—RECORDING—DEED OF TRUST.

1. The charter of a railroad company authorized it "to have, purchase, possess, enjoy and retain lands, rents, hereditaments, tenements, goods, chattels and effects of whatsoever kind, nature or quality the same may be, and the same to sell, grant, demise, alien and dispose of." *Held*, that this authorized a purchase by the company of a railroad lying within the limits prescribed by its charter.

[See note at end of case.]

2. A railroad company whose charter contained the clause set out in the preceding headnote, and which was also authorized to incorporate its stock with the stock of any other company, had power to sell its railroad to any other company authorized to buy it.

[Cited in St. Louis, V. & T. H. R. Co. v. Terre Haute & I. R. Co., 33 Fed. 445.]

[See note at end of case.]

3. When a railroad company has authority to purchase and does purchase a railroad lying within its chartered limits, the road so purchased becomes subject to a mortgage executed by the purchasing railroad company upon its line of road, completed and to be completed, but not to the prejudice of mortgages previously executed on the railroad so purchased.

[See note at end of case.]

4. The vendors of a railroad so purchased who received preferred stock in the purchasing company for the purchase price of the railroad sold, accepted interest thereon for years and generally acquiesced in the sale, are not entitled to be first paid out of the separate proceeds of the railroad sold, after the satisfaction of the separate mortgages on the same.

[See note at end of case.]

5. Power conferred on a railroad company to sell its road, includes the power to mortgage the same and the franchises necessary to use and enjoy it, not including, however, the franchise of being a corporation.

6. Power to borrow is implied in the creation of all business corporations.

[See note at end of case.]

7. The registry of a mortgage not executed in such manner as to authorize its record in the proper office, is not of itself notice to parties subsequently dealing with the mortgaged property.

8. A deed of trust in the nature of a mortgage is technically a deed, and when executed with the formalities required by the law of Georgia, for the registration of a deed, may be properly registered, and its registry will be constructive notice to all the world.

[See Parsons v. Denis, 7 Fed. 317.]

In equity. This was a petition [by Thomas Branch and others, and Thomas P. Branch, partners as Branch, Sons & Co. and the South Georgia & Florida Railroad Company] filed in the principal case of [Morris K.] Jessup, Trustee, v. The Atlantic & Gulf Railroad Company et al. [Case No. 7,299] by Branch,

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Sons & Co. The petition alleged that the Atlantic & Gulf Railroad Company had purchased the railroad of the South Georgia & Florida Railroad Company, in payment for which it had issued preferred stock in its own company. The petitioners averred that they were holders of this preferred stock, and they claimed that on a sale of the railroad of the Atlantic & Gulf Railroad Company, including that portion thereof purchased as aforesaid, they would be entitled to priority of payment out of the proceeds of the sale of so much of the railroad as was purchased from the South Georgia & Florida Railroad Company; that their equities were better than those of the mortgagees of the Atlantic & Gulf Railroad Company. The prayer of this petition was according to this claim. [Petition dismissed.]

W. W. Montgomery, for petitioners.

W. S. Chisholm, Robert Falligant, Henry R. Jackson, A. R. Lawton, and W. S. Basinger, contra.

BRADLEY, Circuit Justice. The petition sets forth certain agreements for the purchase of the South Georgia & Florida Railroad by the Atlantic & Gulf Railroad Company, the first being dated June 19th, 1868; the second June 15th, 1869; the third September 1st, 1869; the fourth and last being dated June 8th, 1876, and being a conveyance or deed of bargain and sale for the said railroad.

A copy of one of the stock certificates is appended to the petition and is in the regular form of a certificate of stock drawing interest; it is headed: "$6,600, No. 250, 66 shares. Atlantic & Gulf Railroad of Georgia. Special guaranties, seven per cent stock, issued under a contract with the South Georgia & Florida Railroad Company, bearing date January 2, 1869, for the construction of the South Georgia & Florida Railroad." It certifies that Branch & Sons or bearer is entitled to sixty-six shares, on which the par value of one hundred dollars has been paid, of the special stock of the Atlantic & Gulf Railroad Company, on which interest from date is perpetually guarantied at the rate of seven per cent per annum, payable semi-annually at the office of the company in Savannah, on the first days of May and November in each year. This scrip to be renewed with other like scrip when the blanks for interest on the back are filled. Witness, etc., signature of president and seal of company, and dated November 1, 1872, with indorsements of interest paid to November 1, 1874. A similar petition was filed by W. B. Bennett. An amendment was afterwards allowed to be made to the original petition, joining the South Georgia Railroad Company therein, and alleging that the contract was ultra vires and void, and against public policy, and that neither company under its charter had any power to

make such a contract. That at most it was but a lease of the road, and should be rescinded for non-compliance with its terms. But, if held a valid conveyance, still the petitioners, being bona fide holders of the scrip, and some of them original holders, should have the relief prayed in the original petition.

The question whether the two companies had the power to make the contract which they did depends on the condition of their respective charters at the time. The Atlantic & Gulf Railroad Company was constituted by the consolidation of two companies in 1863, under an act of the legislature passed April 18, 1863. These were the Savannah, Albany & Gulf Railroad Company, chartered December 25th, 1847, and the Atlantic & Gulf Railroad Company, chartered 27th February, 1856. The consolidated company took all the immunities, franchises and privileges granted to both companies by their original charters. The original charter of the Savannah, Albany & Gulf Railroad Company invested it with "all the rights, privileges and immunities which by the laws of Georgia were held and enjoyed by any other incorporated railroad company or companies." The original charter of the Atlantic & Gulf Railroad Company conferred upon it "all the privileges, immunities and exemptions granted to the Central Railroad and Banking Company, and the Georgia Railroad and Banking Company, or either of them, by the acts incorporating said companies and the several acts amendatory thereof." From these provisions it results that the consolidated company had all the rights and powers granted to any other company whatever, prior to December 25, 1847, and all such as had been granted either to the Central or the Georgia Railroad Companies prior to February 27, 1856. It is not shown that any powers, germane to the subject under discussion, can be found in the charters referred to, going further than "to have, purchase, possess, enjoy and retain lands, rents, hereditaments, tenements, goods, chattels and effects of whatsoever kind, nature or quality the same may be, and the same to sell, grant, demise, alien or dispose of."

This enumeration of powers is sufficient to enable the companies to purchase a railroad if not precluded from doing so by the objects and purposes of its charter; but would not be sufficient, without the aid of other legislation, to enable it to purchase and possess à line of road outside of the limits prescribed to it. An inspection of the charter of the Savannah, Albany & Gulf Railroad Company, however, shows that the road, purchased in the present case, was not without, but precisely within, the limits of that charter. The charter gave the right to construct a railroad communication between the city of Savannah and the city of Albany, with such continuations and branches as might be requisite. Now, since it had the

power to purchase, there is no reason why it should construct a new road the entire distance, if it found one to its hand for a portion of the route, which it could purchase. The South Georgia & Florida Railroad Company had just such a road, or charter for a road, between Thomasville and Albany, as the Savannah, Albany & Gulf Railroad Company, and the consolidated company entitled to its franchises, required, and they purchased it. We do not see how this purchase can be regarded as ultra vires of the consolidated Atlantic & Gulf Railroad Company.

Next, as to the powers of the South Georgia & Florida Railroad Company to sell. This company was authorized by its charter, dated December 22, 1857, amongst other things, to construct a railroad from Albany to Thomasville, and from thence to the Florida line, about ten miles beyond Thomasville; and the company was invested with all the powers and privileges granted to the Georgia & Florida Railroad Company, of which it was an offshoot. The latter company, by its charter, dated January 22, 1852, had all the powers of the Savannah & Albany Railroad Company given to it by its original charter and amendments, not inconsistent with the rights and privileges of that company. It was further endowed with power, at any time, to incorporate its stock with the stock of any other company on such terms as might be mutually agreed upon. Now, we have seen that the Savannah & Albany company had all the power granted to any other railroad company in the state; and that the powers of the Georgia and Central Companies, which were incorporated in 1833, extended to the purchase and sale of any kind of property whatever. The South Georgia & Florida Railroad Company, therefore, not only had the power to purchase and sell, but the still higher power of consolidating with any other company. In view of these large grants of power, and in view of the maxim that the greater includes the less, we can have no doubt that the Atlantic & Gulf Railroad Company, and the South Georgia & Florida Railroad Company, had full powers to make the contract which is brought into question, and that the sale of the line of the latter between Thomasville and Albany was a valid sale. It included all the franchises necessary to run and operate the road. This view of the case disposes of all those objections which are founded upon the supposed illegality of the contract as being ultra vires of the parties to it.

We are further of opinion that, inasmuch as the line thus purchased by the Atlantic & Gulf Railroad Company was within its chartered limits, and came in place of a road which it might have constructed itself, under its own charter, that it is covered by both the first and second mortgages of that company; but, of course, not to the prejudice of the priorities due to the separate mortgages on that branch of the road. This conclusion renders it unnecessary to consider the position of the petitioners in which they are placed by their own conduct in taking the preferred stock referred, receiving interest thereon for long years, and generally acquiescing in the whole transaction. We think that they are entirely without equity, and the prayer of the petitioners is denied.

We may add, in this connection, that we have no doubt of the power of the Atlantic & Gulf Railroad Company to mortgage its road and the franchise therewith connected and necessary to run and operate the same, not including the franchise of being a corporation. If it had the power to sell, it had the power to mortgage, which is the lesser power, and included therein. This is an old doctrine, and has been confirmed by the decision of the supreme court of Georgia: Wayne v. Myddleton, 2 Kelly, 383. No express power to borrow money was necessary, for that is implied in the creation of all business corporations, although in fact express power was given to the Central Railroad Company in December, 1845, to borrow money on its bonds, and this power, by the terms of its charter, was, therefore, conferred upon the Savannah, Albany & Gulf Railroad Company, and, hence, upon the consolidated Atlantic & Gulf Railroad Company. We think the mortgages are valid, and a lien upon the entire road of the company, including the portion lying between Thomasville and Albany; and that a decree should be made for the foreclosure and sale of the road, its equipments and franchises, for the purpose of raising the amount due on the mortgage bonds, as prayed in the bill of complaint.

A point, however, has been raised, which ought to be noticed here, that the first mortgage was not acknowledged or proved before the proper magistrate. The execution appears to have been made with all due solemnities, and in the proper form; but the acknowledgment was made before and certified by a justice of the supreme court of the state of New York. It is contended that this is not a compliance with the laws of Georgia, to authorize the recording of an instrument in the proper offices. It is admitted that it is sufficient in the case of a deed; but that a mortgage, if executed out of the state, should be acknowledged before a consul or a commissioner of the state of Georgia. This objection is extremely technical; but, if valid, we must decide that the registry of the document is not of itself notice to the parties subsequently dealing with the property. We think, however, that the objection cannot prevail. The instrument in question is not a mortgage in form, but a deed of trust; and without inquiring whether even a mortgage is not itself a deed so as to be governed by the provisions relating to deeds, we think that this document is

technically a deed; and that its execution and acknowledgment in such manner and form as are required in the case of deeds, is sufficient. The objection, therefore, cannot prevail.

[NOTE. The circuit court, after dismissing the petition, made a final decree in the case, ordering a foreclosure and sale of the railroad of the Albany & Gulf Railroad Company, with all its branches, including the branch from Thomasville to Albany, subject, however, to all prior mortgage liens, including the first and second mortgages on the Thomasville branch. From this decree the interveners have appealed. The supreme court affirmed the decision of the circuit court, upon the ground that the sale of a part of the South Georgia & Florida Railroad Company, and its franchise to, and its purchase by, the defendant company was valid, and not ultra vires; that the interveners (Branch) were stockholders of the purchasing company, and, as such, entitled to no relief in equity; that the South Georgia & Florida Railroad Company and the other interveners were not vendors whose purchase money was unpaid, the company having received all it stipulated for, and the others being stockholders; and that the deed of trust or mortgage extended to and covered any portion of the road of the selling company, authorized by its charter, which was constructed after execution and delivery of the mortgage. Branch v. Jesup, 106 U. S. 468, 1 Sup. Ct. 495.]