THE STATE OF MISSOURI at the relation of GEORGE W. WHITECOTTON, Prosecuting Attorney, Appellant, v. THE HANNIBAL AND RALLS COUNTY GRAVEL ROAD COMPANY, Respondent.

St. Louis Court of Appeals, November 5, 1889.

1. **Quo Warranto Against Corporations.** An action of *quo warranto* instituted against a corporation admits the corporate existence, and does not lie when the corporation is not charged with misuser or non-user of corporate franchises granted to it, nor with the usurpation of franchises not granted to it.

2. **Corporate Powers.** A corporation, authorized to construct a certain road and collect toll thereon, has the right to purchase a like road already constructed, and charge toll thereon.

3. **Quo Warranto Against Corporations.** The validity of the title of the corporation acquired by such purchase cannot be determined in an action of *quo warranto.*

*Appeal from the Pike Circuit Court.* -HON. E. M. HUGHES, Judge.

AFFIRMED.*

*Robinson & Farrell,* for the appellent.

Although the defendant was legally incorporated, and although the law, under which it was incorporated, authorized corporations organized thereunder to collect tolls, still the defendant never acquired any right whatever to erect toll gates and collect tolls on the old road bed of the "Hannibal, Ralls County and Paris Plank.

---

*Judge Thompson dissenting.

Road Company. and its persistent exercise of the right constitutes a misuser of its franchise for which forfeiture of its charter will be declared. High Ex. Leg. Rem., sec. 648, *p. 472; *Commonwealth v. Com. Bank*, 28 Pa. St. 383; *Mumma v. Potomac Co.*, 8 Peters, 287; *Terrett v. Taylor*, 9 Cranch, 43; Angell & Ames, Corp., sec. 776; *Attorney General v. Railroad*, 6 Iredell, 461. But even if it has not been guilty of misuse so as to warrant the court in declaring its charter forfeited, still the court should have rendered a judgment of ouster as to the particular franchise which defendant exercised without any lawful right, to-wit: Collecting tolls on the road bed in question. High Ex. Leg. Rem., sec. 648; *People v. Trustees, etc.*, 5 Wend. 211. Information in nature of *quo warranto* and not injunction is proper remedy. *Attorney General v. Ins. Co.*, 15 Johns. 358; s. c., 2 Johns. Chan. 371; *People v. Trustees*, 5 Wend. 211; *People v. Turnpike Co.*, 23 Wend. 197; 23 Wend. 254; 23 Wend. 222.

*Harrison & Mahan*, for the respondent.

The issue tendered by the information and answer is one solely of corporate existence. Our first proposition is that this issue cannot be tried in a proceeding instituted directly against the defendant alone, as sought to be done in this case. The question is, whether the persons who are doing business in the name and under the claim of a corporate right have been legally authorized by the state so to act, or whether they are usurping corporate rights. This makes the officers of the corporation not only proper but necessary parties to the proceeding. A thing that never existed, or a non-existence, could not in the nature of things usurp any thing. A judgment could not of course be entered against a non-existence. The corporation is the necessary and proper party when its rightful corporate existence is conceded and a forfeiture is sought. "In a

proceeding against a corporation the question is one of forfeiture, not of existence.'' Potter on Cor., sec. 675; Ang. and Ames on Cor., sec. 756. ''When a corporation by name is charged in *quo warranto*, its legal existence is admitted, and non-performance of condition precedent cannot be inquired into.'' Morawetz on Cor., sec. 1030, note; *People v. Carpenter*, 24 N. Y. 86; *People v. Rensallear*, 15 Wend. 113; Boone on Cor., sec. 165. This is the doctrine of our state. *State v. Caffee*, 59 Mo. 59; *State v. Reynold*, 61 Mo. 203; *State v. Wood*, 13 Mo. App. 189; s. c., 84 Mo. 376. In proceedings by the state by *quo warranto*, there is no distinction between *de jure* and *de facto* existing. To question existence the state must proceed upon the theory of no legal existence. The information does not state a cause of action. 5 West. Rep. 592; 6 West. Rep. 276.

Briggs, J., delivered the opinion of the court.

The defendant is a corporation duly organized under article 4, chapter 21, of the Revised Statutes, 1879, with power and authority to construct and own a gravel road beginning at a point on the west line of the Hannibal and New London Plank Road on the county line between the counties of Marion and Ralls, thence westward on said county line two and a half miles, thence on the line of the gravel road of the Hannibal, Ralls County and Monroe Plank Road, to a point on said last-named road, where it crosses a county road in section 13, township 56, range 6, west.

The charter members of this corporation were Temple H. Davis and twelve other citizens of Marion and Ralls counties. The articles of incorporation were filed in the office of the secretary of state, and a certificate of incorporation issued as required by law on the fifth day of June, 1882. Since the date of its incorporation, the defendant has had the control and possession of an improved or gravel road located on the route indicated in its articles of association, and has erected toll

gates thereon, and has been exercising the rights and franchises authorized by the statute under which it is incorporated, to-wit, to demand and collect toll from persons traveling over said road.

So far as the record in this case shows, it appears that the road so claimed and controlled by the defendant was originally owned and constructed by a corporation known as "The Hannibal and Ralls County and Paris Plank Road Company," hereinafter called the "Plank Road Company." This company was incorporated on the fifth day of May, 1852, in pursuance of an act of the legislature of Missouri, entitled "an act to authorize the formation of associations to construct plank roads and macadamized roads." Approved, February 27, 1851. Sess. Acts, 1851, 259. This company was authorized to build and construct a plank road from the city of Hannibal, through the counties of Marion and Ralls, in the direction of Paris, in Monroe county, to be located on such route as might be selected by the board of directors. This corporation immediately located its road and proceeded to procure the right of way for it, and to construct the same in compliance with the provisions of the statute. By the terms of the articles of incorporation, the existence of this corporation was limited to thirty years.

The act of 1851, section 6, provided that the directors of the road company, organized under it, "may, with the consent of the county court of the proper county, locate its (road) over and upon any state or county road or highway, and thereupon such state or county road or highway, or such portion thereof as may be occupied and appropriated by said company, *shall become the property* of said company for the purpose of making and maintaining said road and the gates and toll houses thereon. And the county courts of the several counties of this state are hereby authorized to consent to the appropriation and occupation of any such state or county road," etc.

The directors of the plank road company located the greater portion of its road, now controlled and claimed by the defendant, and situated in Ralls county, along the line of a public road. The evidence shows that about two-thirds of the plank road for a distance of about six miles, and extending through Ralls county, was located on what was then known as a state road. Wherever the topography of the ground permitted, the line of the state road was departed from for the purpose of avoiding grades and shortening distances. After the road was located, the county court of Ralls county on the seventh day of July, 1852, by an order entered of record, consented to the appropriation of so much of the public highway as had been selected for the location of the plank road, and relinquished the use of the same to the "Plank Road Company."

On the fourth day of March, 1854, the ''Plank Road Company," executed a deed of trust to secure the payment of certain promissory notes amounting to twelve thousand, four hundred dollars. This deed of trust conveyed to the trustees, therein named, all property belonging to the corporation, including the strip of ground or right of way on which its road was constructed, and all toll houses and the land on which they were built, and also all materials belonging to or used in the construction of the road. The money secured by this mortgage was borrowed for the use of the corporation, and presumably to pay a portion of the costs of the construction of its road. Default was made in the payment of the notes, and, on the eighteenth day of September, 1856, the trustees sold the property under the deed of trust, and at said sale one Thomas S. Miller and twenty-five other residents and citizens of Marion and Ralls counties became the purchasers, and received a deed from the trustees conveying all of the property described in the deed of trust.

On the seventeenth day of February, 1857, the legislature of Missouri (Sess. Acts, 1857, p. 435), by a

private or special act, incorporated the purchasers of said plank road, under the name of the Hannibal, Ralls and Monroe Plank Road Company, hereinafter designated as the " Monroe Plank Road Company." Sections one and two of this private act of incorporation read as follows :

" Section 1. That the aforesaid purchasers of the Hannibal, Ralls county and Paris plank road and appurtenances, at the sale of the same by George A. Hawes and George B. Pogue, as trustees, on the seventeenth day of September, 1856, and their successors, and they are hereby declared a body corporate and politic, to be known by the name and style of the "Hannibal, Ralls and Monroe Plank Road Company;" and, as such, to have perpetual succession, and to hold property, and sue and be sued as other corporations. The corporation, hereby made, to have the like powers, privileges and franchises, and to be subject to the like restrictions, in all respects, as if they had been regularly and lawfully incorporated under and by virtue of the provisions of an act of the general assembly of this state, entitled, ' an act to authorize the formation of associations to construct plank roads and macadamized roads,' approved February 27, 1851. * * *

" Section 2. This corporation are to have the right to construct their road, or any part thereof, of gravel, and to charge tolls as if said road were a plank road entirely." * * *

The Monroe Plank Road Company continued to use and collect tolls on the road until the organization of the defendant corporation, when the stockholders of the old company, at a stockholders' meeting, voted to transfer all of the property of the old company to the defendant, in consideration of the issuance to each stockholder of as much stock in the new corporation, as he held in the old. This was accomplished and the stockholders of the old company became the incorporators of the new company. Thereupon the defendant

took possession of that portion of the road formerly belonging to the old company, and hereinbefore referred to, and has continued since the organization, to-wit, June 5, 1882, to demand and collect tolls thereon.

This action was commenced in the circuit court of Ralls county, on March 21, 1887, and by change of venue was transferred to the Pike circuit. It is an information in the nature of a *quo warranto*, prosecuted in the name of the state at the relation of George W. Whitecotton, prosecuting attorney of Ralls county. The relator in substance complained that the defendant was unlawfully exercising a franchise without any warrant, charter or grant, to-wit, the right of keeping up toll gates and collecting tolls on that portion of the gravel road herein referred to and situated in Ralls county. The relator, by way of specific allegation, alleged the want of a legal incorporation of the defendant, and also that the use by defendant of that portion of the gravel road in Ralls county was unlawful and without warrant of law, for the reason that the county court of Ralls county could not, and did not, grant or relinquish the use of the public road, on which the gravel road was built, for a longer period than the life of the Hannibal, Ralls and Paris Gravel Road Company; that the original corporation had no right to sell or mortgage that portion of its right of way located on the public highway, and that the defendant was not the owner of said road bed or easement, but that the use of the same had reverted to the public as a highway. The relator also alleged that the defendant had permitted that portion of the road to become impassable for the greater portion of the time since 1882. He asked that the defendant be required to show by what authority or warrant it claimed to have and enjoy the franchises set forth.

The defendant answered and pleaded its incorporation, as herein set out, as its warrant or charter for exercising the right to maintain toll gates and collect tolls

on said gravel road, and that it had succeeded by purchase to all the property rights of the original corporation in said road.

The court rendered judgment for the defendant on the ground that the plaintiff's remedy was not by an action of *quo warranto*, and we think the opinion entertained by the trial judge was right.

This is a proceeding against the defendant as a corporation; therefore, its corporate existence stands admitted. If the defendant was never legally incorporated, and the plaintiff desired an adjudication of that question, the information would have to be directed against the individual members of the corporation. But under the issue as made by the pleadings, there are only two questions that can be considered: *First.* Has the defendant corporation by *misuser* or *non-user* *abused* the privileges and franchises granted by its articles of incorporation? *Second.* Has the defendant *usurped franchises not granted* by its charter or other organic act of incorporation? Angell and Ames, Corp., [11 Ed.] sec. 734; 2 Morawetz Corp., secs. 938–1033; Boone, Corp., secs. 161, 162.

The plaintiff in the information charged an abuse of the corporate franchise by failure to keep the road in repair, but it failed to sustain the charge with any proof, and it was abandoned on the trial. So there can be no question in the case as to the abuse by defendant of its franchises and privileges by misuser or non-user.

But the plaintiff contends that the judgment should have been in his favor on the second proposition: *First.* Because a portion of the road in Ralls county, which defendant claimed to own, was a public highway, and that the defendant had erected toll 'gates and was demanding and exacting toll from persons traveling thereon, without having any title or interest in that portion of the road; and that for this reason the defendant had usurped franchises not granted. *Second.*

Because the fundamental condition of the defendant's right to charge toll was the *construction of a gravel road, and not the purchase* of a gravel road already constructed.

I.    An information in the nature of a *quo warranto* is a legal proceeding, and, when directed against a corporation, can only be made to operate on corporate franchises. Property rights cannot be interfered with or determined in such a proceeding. Morawetz, Corp., sec. 1033; Boone, Corp., sec. 167. The answer of a defendant in such a case must be either a disclaimer or a justification. In the case at bar, the defendant answered that it was duly incorporated under the laws of the state of Missouri, with power and authority to own or construct a gravel road along a designated line, to erect toll gates thereon, and demand and exact reasonable toll from persons traveling over said road, and that this was the defendant's authority for so doing. The only possible inquiry under this view of the case was, has the defendant such a charter, and, if so, is the road located according to charter requirements? There was no controversy about either proposition. The defendant was regularly incorporated, and was in possession of a gravel road located along the line designated by its charter.

The defendant being in possession of such a road, we do not think the courts would, in this action, permit an inquiry into the character of the defendant's title to the easement, and, if they found it defective in whole or part, make this a cause for forfeiture of the charter privileges. *People v. Turnpike Co.*, 2 John. 190; *People v. Whitcomb*, 55 Ill. 172; *State v. Kingan*, 51 Ind. 142.

The writ of *quo warranto* is employed to test the right of a corporation to exercise a franchise, and not to test the legality of any act of the corporation. If the defendant in constructing its road had taken possession of the land of a citizen without compensating him therefor, this would not justify a proceeding of this kind and

authorize a forfeiture of the defendant's franchises. If the defendant is wrongfully obstructing the public highway, this matter can be easily remedied by appropriate proceedings.

II.   If the "Monroe Plank Road Company" had no right to sell its tangible property, or if the purchase by the defendant was unauthorized or was not a substantial compliance with the terms and requirements of the statute, under which the defendant was incorporated, then the defendant has failed to comply with a condition subsequent, annexed to its right to exercise the franchise granted, and the forfeiture of the franchise, thus usurped, can be declared in a proceeding of *quo warranto*.   2 Morawetz, Corp. [2 Ed.] secs. 1022, 1023.

It must be conceded that the right exists in every corporation in this state to sell its tangible property, and it is also true that a corporation can purchase such real and personal estate as the purposes of the corporation require.   R. S. 1879, sec. 706.   But whether the statute, which authorized and required the defendant to *construct* a gravel road between certain points and along a specified and defined route, is satisfied or complied with by the purchase of a like road, located on the same route, presents a question about which there is some doubt or controversy.   A literal reading or interpretation of the statute would compel us to decide the question in the negative.   But when we consider the object of the law, and the evident intention of the legislature, a different answer ought to be given.   The object of the law was not merely to provide for the construction of gravel roads, but also to maintain such roads for the use of the traveling public.   If the defendant found that it was to its pecuniary advantage to buy a road already constructed, and extending along its chartered route, how could the public be prejudiced by such purchase?   What would the state gain, or how could the public be benefited, by compelling the

defendant to build another road in close proximity to the old road? Why should the state require the defendant to go to the useless expense of building a new road, which public necessity did not require, and the building of which would place an additional burden on the adjacent lands with no corresponding benefits? Morawetz, Corp. [2 Ed.] sec. 372; *Branch v. Railroad*, 3 Woods, 481; *Branch v. Jessup*, 106 U. S. 468; *Stockton, etc., Railroad Co. v. Stockton*, 51 Cal. 328. Mr. Morawetz in treating of this subject says: "The right of a railroad company to purchase or lease a line of road already constructed, or to make arrangements for the use of another company's tracks, depends upon the circumstances of the case. The object for which the company was formed must be considered. If a company is chartered for the purpose of constructing and operating a new railroad between given points, different from any existing line, it would be a departure from the charter to buy or lease a road already built between the two points. If, however, the company should be able to form the line of road contemplated by its charter, by constructing part of it and using a road already built to complete the line, there is no reason why it should not do so. The ultimate purpose of an ordinary railroad company is, not to build a railroad, but to carry on the business of common carrier by operating a railroad. If the company can obtain just the line of road, which its charter calls for, by purchase, lease or gift, every reason of policy indicates that it should be allowed to do so, rather than compel it to go to the unnecessary and wasteful expenditure of constructing a new railroad." Morawetz, Corp. [2 Ed.] sec. 372. This doctrine is fully supported by the authorities cited. In the case at bar the evidence shows that the road purchased by the defendant, and occupied by it at the date of the institution of this suit, was the kind of road which the defendant was authorized "to construct and own," and was

located on the exact line and between the same points
as the road called for in the defendants' articles of
incorporation.   Under these circumstances, we think
the purchase by the defendant of this road was a sub-
stantial compliance with its charter, and that we are
supported in this both by reason and the authorities
cited.   Whether the defendant procured a good title to
all or only a portion of its road, presents another and
different question, which cannot be inquired into in this
proceeding.   It is sufficient for the defendant to show
that, at the time of the institution of this suit, it was in
possession by purchase of a road located according to its
charter, and, having done so, we do not think the state
in this action can inquire into the character of the title
or possession acquired by defendant by means of the
purchase.

The plaintiff relies on case of *People v. Utica
Ins. Co.*, 15 John. 358.   In that case, the supreme court
of New York sustained a *quo warranto* proceeding
brought by the attorney general, which required the
defendant to show by what authority it was doing a
general banking business.   The contention of the attor-
ney general was, that the defendant was organized, and,
only, authorized to do business as an *insurance company*,
and was usurping the franchise of a banking corpo-
ration by *doing a banking business* in connection with
the insurance business.

The distinction between that case and the one under
consideration is very apparent.   In the case cited, the
defendant was certainly usurping or exercising a *fran-
chise* not authorized by its charter.   If, in the case
under consideration, the defendant had been operating
a *railroad* under its charter, then the cases would be
analogous, and there would be on the part of the
defendant a clear usurpation of corporate franchises not
granted by its charter.

Plaintiff's counsel also think that the case of
*People v. Geneva College*, 5 Wend. 217, is an authority

sustaining this proceeding. In that case, the defendant was authorized by its articles of incorporation to establish and maintain a college at the town of Geneva, in the state of New York. The defendant, assuming to act in pursuance of its charter, established a medical school in the *city* of New York. The supreme court of New York held that this was a clear usurpation of a franchise not granted, and that *quo warranto* was the proper proceeding to have a forfeiture declared.

We think that case was properly decided, but we do not think there is any analogy between that case and this. If the defendant in the case at bar had built a branch gravel road and was assuming to collect toll under its charter for the main line, or if the defendant had constructed or built a gravel road in some other locality than the one specified in its articles of incorporation, then the two cases would be alike.

Judgment affirmed. Judge ROMBAUER concurs in this opinion. Judge THOMPSON dissents.

ROMBAUER, P. J., delivered the following concurring opinion:

I concur in the result reached in the foregoing opinion, although I confess the subject is not free from doubt. The trial court, whose judgment is presumptively correct, is in such cases entitled to the benefit of the doubt. I cannot find any analogous cases wherein *quo warranto* was upheld as the proper remedy, whereas the case of *People ex rel. Clauson v. N. & S. Plank Road Company*, 86 N. Y. 1, a case similar in its facts, does decide that injunction is a proper remedy.

In order to avoid any misunderstanding of my position, however, I desire to say, that I do not wish to be considered as expressing any opinion whatever as to the ultimate rights of the parties, whenever tested in a proper proceeding, and that I understand the foregoing opinion of the court as expressing none.